STATE EX REL. FLOWERS, Appellant, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.

*No. 75–501. Argued November 1, 1977.—Decided January 3, 1978.* (Also reported in 260 N.W.2d 727.)

For the appellants there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* deputy state public defender, and oral argument by *Mr. Brandt.*

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. This case presents the question whether conduct of a parolee arising out of an incident for which he was criminally charged and acquitted may constitute one of the grounds for parole revocation. The case also raises questions with respect to the scope and nature of preliminary revocation hearings, the adequacy of notice, the need for a speedy hearing, and the sufficiency of the evidence.

Flowers was convicted of indecent behavior with a child, contrary to sec. 944.11(2), Stats., in 1967, and sentenced to an indeterminate term not to exceed ten years. He was paroled in 1971. His parole was revoked in 1974 by the Department of Health & Social Services (hereinafter Department) after a three-day hearing. He was alleged to have violated his parole in five instances. [1]

---

[1] "1. On or about June 9, 1972, you did assault and batter one Confessor Ortiz by striking him in the face and otherwise assaulting his person in violation of Rule 1 of the rules and conditions of your parole.

"2. That on or about June 9, 1972, you did have in your possession a firearm, to wit: a shotgun, in violation of Rules 4 and 5 of the rules and conditions of your parole.

"3. That on or about February 26, 1972, you were in possession of a firearm in a public place, to wit: a loaded rifle in Big Jimmy Green's Tap, 1432 West Vliet Street, Milwaukee, Wisconsin, in violation of Rule 4 of the conditions of your parole.

"4. That on or about February 26, 1972, at Big Jimmy Green's Tap, 1432 West Vliet Street, Milwaukee, Wisconsin, you engaged in reckless use of a firearm, to wit: a loaded rifle, or engaged in conduct regardless of human life, by discharging said rifle in said public place, causing injury to another person, to wit: Herbert Sims, all in violation of Rule 1 of the rules and conditions of your parole.

The hearing examiner found that each of the allegations was established by a preponderance of the evidence, and the Department adopted his findings.

The first and second grounds for revocation concerned an altercation which occurred on June 9, 1972. On that date Flowers admittedly battered one Confessor Ortiz, allegedly because Ortiz attempted to molest Flowers' wife. Witnesses testified that Flowers had a gun at the time.

The third and fourth grounds for revocation relate to a barroom shooting. Flowers took a loaded rifle into Big Jimmy Green's Tap in Milwaukee. The rifle discharged, and a man was injured. At a preliminary revocation hearing, evidence was introduced that Flowers had permission from his parole agent to possess a firearm for hunting; that he was attempting to sell the rifle; and that it discharged accidentally. Apparently, on the basis of this information, the examiner at the preliminary hearing determined that there was no probable cause to believe Flowers had violated his parole agreement when he took the loaded rifle into the tavern. However, at his subsequent parole revocation hearing, the allegation of improper possession of a firearm was set forth as the third grounds for revocation. The fourth charge of reckless use of a firearm was also considered at his revocation hearing, although it was not specifically considered at his preliminary revocation hearing.

Finally, the revocation was also based on the charge that Flowers absconded from supervision. The record shows that in August, 1972, shortly before a scheduled preliminary hearing on parole revocation, Flowers left the state. He was located and arrested in St. Paul, Min-

"5. That on or about August 7, 1972, you absconded from supervision under the terms of your parole and you did not report to or inform your agent of your whereabouts and activities, which were unknown until your return to the State of Wisconsin in 1973, in violation of Rules 3 and 4 of the rules and conditions of your parole."

nesota. He resisted return to Wisconsin, and while released on bond in Minnesota, went to Winnipeg, Manitoba. Later, after detention by Canadian authorities, he was released to officials of the State of Washington. In October of 1973, he was returned to Wisconsin. Flowers maintains there was insufficient evidence to establish that he absconded.

On certiorari review the circuit judge found that reinstatement of the charge relating to possession of a loaded rifle in Big Jimmy Green's Tap, after the examiner who conducted preliminary revocation hearing had found no probable cause, was arbitrary and capricious. This charge was ordered dismissed. In all other respects the petition for a writ of certiorari was denied and the revocation upheld.

Additional facts will be set forth in our consideration of the issues, which are:

1. Does the acquittal of a crime preclude the consideration of conduct related to the alleged criminal incident at a parole revocation hearing?

2. May parole be revoked on the basis of charges as to which no determination of probable cause has been made at a preliminary hearing?

3. May the Department proceed to a revocation hearing on a charge after a determination has been made at a preliminary hearing that there was not probable cause to support the charge?

4. Was the appellant afforded adequate notice of the parole revocation hearing and the grounds alleged for revocation?

5. Was the appellant denied a speedy hearing?

6. Does the evidence support the determination that the appellant absconded?

I.

Flowers contends that reliance, by the Department, on conduct relating to an incident for which he was prose-

cuted and acquitted subjects him to impermissible double jeopardy. Therefore, he argues, such conduct cannot be used to establish grounds for parole revocation.

This argument is directed to the first two charges concerning the battery of Confessor Ortiz.

As a result of this incident, Flowers was charged with reckless use of a weapon, contrary to sec. 941.20 (1) (c), Stats., and with battery, contrary to sec. 940.20. In July of 1972, the first charge was dismissed for lack of evidence. Flowers was acquitted by a jury of the second charge.

Jeopardy, in the constitutional sense, denotes the risk traditionally associated with criminal prosecution and with proceedings to invoke criminal punishment for the vindication of public justice. This risk is absent from proceedings which are not " 'essentially criminal.' " *Breed v. Jones,* 421 U.S. 519, 528, 529, 95 Sup. Ct. 1779, 44 L. Ed.2d 346 (1975).

The essential nature of a proceeding is not determined by its form or label, however; *United States v. U. S. Coin & Currency,* 401 U.S. 715, 718, 91 Sup. Ct. 1041, 28 L. Ed.2d 434 (1970). A proceeding is criminal, for double jeopardy purposes, if it imposes a sanction intended as punishment. *See: Helvering v. Mitchell,* 303 U.S. 391, 399, 58 Sup. Ct. 630, 82 L. Ed. 917 (1938). It is therefore necessary to determine whether the revocation of parole is properly characterized as a punitive sanction, in light of the purposes of the double jeopardy clause, the nature of the individual interests at stake, and the character of the parole revocation decision.

Under the double jeopardy clause, a verdict of acquittal is final, ending a defendant's jeopardy, so that he may not thereafter be subjected to criminal sanctions for the same offense. This rule reflects the deeply ingrained idea that repeated attempts at punishment would unfairly

subject him to embarrassment, expense and ordeal, would put him in a continuing state of anxiety and insecurity, and would enhance the possibility that even though innocent he may be found guilty. *Green v. United States,* 355 U.S. 184, 187, 78 Sup. Ct. 221, 2 L. Ed.2d 199 (1957).

In *Morrissey v. Brewer,* 408 U.S. 471, 479, 92 Sup. Ct. 2593, 33 L. Ed.2d 484 (1972), the United States Supreme Court recognized that revocation "is often preferred to a new prosecution because of the procedural ease of recommitting the individual on the basis of a lesser showing by the State." This does not mean, however, that a revocation hearing is a part of a criminal prosecution. It clearly is not, nor does it require all the procedural components associated with an adversary criminal proceeding. *Morrissey v. Brewer, supra,* at 480; *State ex rel. Struzik v. H&SS Dept.,* 77 Wis.2d 216, 220, 221, 252 N.W.2d 660 (1977); *State ex rel. Hanson v. H&SS Dept.,* 64 Wis.2d 367, 378, 379, 219 N.W.2d 267 (1974). Rather, it has been repeatedly emphasized that:

". . . there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences. . . ." *State ex rel. Struzik v. H&SS Dept., supra,* at 220, *quoting Gagnon v. Scarpelli,* 411 U.S. 778, 788, 789, 93 Sup. Ct. 1756, 36 L. Ed.2d 656 (1973).

Thus revocation does not require a judicial hearing, *Morrissey, supra,* at 486; the rules of evidence need not be strictly adhered to, *Morrissey, supra,* at 489; and the privilege against self-incrimination does not prevent consideration of inculpatory statements or a parolee's refusal to answer questions. *State ex rel. Struzik, supra; State v. Evans,* 77 Wis.2d 225, 252 N.W.2d 664 (1977). These distinctions reflect substantial differences between the interests involved in parole revocation and those in a criminal prosecution.

Revocation hearings are not concerned with retribution. Parole and probation are intended to foster the reintegration of the individual into society at the earliest opportunity. *Gagnon v. Scarpelli, supra,* at 783. The ultimate question in revocation proceedings is whether the parolee remains a "good risk"; whether his rehabilitation can be successfully achieved outside prison walls or will be furthered by returning him to a closed society. *State ex rel. Plotkin v. H&SS Department,* 63 Wis.2d 535, 543, 545, 217 N.W.2d 641 (1974); *State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 549, 185 N.W.2d 306 (1971).

In making this determination, the Department is concerned not only with threats to the safety of the general community, but also with any behavior inimical to the parolee's rehabilitation. *See: Morrissey, supra,* at 478; *Gagnon v. Scarpelli, supra,* at 783. For this reason, parole may be revoked for conduct which does not violate the criminal law. *Morrissey, supra,* at 478; *State v. Evans, supra,* at 234.

The ends of parole revocation are therefore distinct from the punitive functions of the criminal law, and the revocation decision requires wide-ranging consideration of intangible non-legal factors irrelevant to a criminal prosecution. This court has recognized that:

"'. . . an agency whose delicate duty is to decide when a convicted offender can be safely allowed to return to and remain in society is in a different posture than the court which decides his original guilt. To blind the authority to relevant facts in this special context is to incur a risk of danger to the public. . . .'" *State ex rel. Struzik, supra,* at 223, *quoting, In re Martinez,* 1 C.3d 641, 650, 83 Cal. Rptr. 382, 463 Pac.2d 734 (In Bank 1970) *cert. den.* 400 U.S. 851.

While recognizing that a parolee suffers a "'grievous loss'" when his conditional liberty is withdrawn, *Mor-*

*rissey, supra,* at 482, we believe there is a considerable distinction between the liberty of a parolee and that of one who stands accused of a crime without a prior conviction. Legally, the parolee is in the constructive custody of the Department, subject to the forfeiture of his liberty for violation of the conditions of his parole. *State ex rel. Johnson v. Cady, supra,* at 547, 548. Therefore revocation deprives him:

". . . not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey, supra,* at 480.

This court has said:

"The liberty enjoyed by a probationer is, under any view, a conditional liberty. It is conditioned on adhering to the conditions of probation as set forth in the probation agreement. His position is not that of the non-convicted citizen. . . ." *State v. Evans, supra,* at 230.[2]

The individual rights and the public purposes at stake in parole revocation are therefore distinct from those ordinarily associated with criminal punishment. The element of punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced.

The sentence he is required to serve upon revocation is the punishment for the crime of which he has previously been convicted. *Brown v. Warden, U. S. Penitentiary* (7th Cir. 1965), 351 Fed.2d 564, 567, *certiorari denied,* 382 U.S. 1028. The revocation hearing is concerned primarily with the manner of serving the sentence previously imposed. *See: State ex rel. Johnson v. Cady, supra,* at 556. Revocation is thus a continuing consequence of the original conviction from which parole was granted. *Standlee v. Smith,* 38 Wash.2d 405, 407, 518

---

[2] "What we say in this opinion applies also to parole revocation." *State v. Evans, supra,* at 228, *fn.* 1.

Pac.2d 721 (1974) ; *People v. Morgan,* 55 Ill. App.2d 157, 204 N.E.2d 314 (1965). Proceeding with parole revocation after an acquittal does not invoke the doctrine of double jeopardy, therefore.

Nor does the doctrine of collateral estoppel, itself an aspect of the double jeopardy clause, *Ashe v. Swenson,* 397 U.S. 436, 90 Sup. Ct. 1189, 25 L. Ed.2d 469 (1970), preclude revocation. Collateral estoppel precludes relitigation of an issue of ultimate fact previously determined by a valid final judgment in an action between the same parties. *Ashe v. Swenson, supra,* at 443. This doctrine applies:

". . . where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and *where the controlling facts and applicable legal rules remain unchanged. . . .*" (Emphasis added.) *C.I.R. v. Sunnen,* 333 U.S. 591, 599, 600, 68 Sup. Ct. 715, 92 L. Ed. 898 (1948).

The second proceeding "must involve . . . the same bundle of legal principles that contributed to the rendering of the first judgment." *C.I.R. v. Sunnen, supra,* at 602.

Here the "bundle of legal principles" is not the same because different burdens of proof apply, and the paramount considerations are different. While this court has never precisely set forth the standard of proof necessary to show a violation of parole or probation, it has been alluded to. To the best of our knowledge all authorities and jurisdictions are unanimous in rejecting the criminal standard of proof beyond a reasonable doubt. In *Morrissey, supra,* at 489, the Supreme Court emphasized that a revocation hearing is not in any sense equivalent to a criminal prosecution and noted, at 479, that parole may be revoked on the basis of a lesser showing.

Other courts have consistently rejected the criminal standard of proof in proceedings for revocation of parole

or probation,[3] and have required a lesser showing variously stated as reasonably satisfactory evidence,[4] a preponderance of the evidence,[5] or clear and satisfactory evidence.[6] In *State ex rel. Johnson v. Cady, supra,* at 559, Mr. Chief Justice HALLOWS, *concurring in part,* proposed a preponderance of the evidence standard. It appears from the record in this case that this is the standard of proof recognized by the Department. In our opinion, the preponderance of evidence standard of proof is the proper standard to use in parole and probation revocation cases.

In *One Lot Stones v. United States,* 409 U.S. 232, 235, 93 Sup. Ct. 489, 34 L. Ed.2d 438 (1972), the Supreme Court held that the difference in the burden of proof between criminal prosecutions and civil forfeiture proceedings precluded application of the doctrine of collateral estoppel. The court said:

> ". . . The acquittal of the criminal charges may have only represented ' "an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." ' *Helvering v. Mitchell,* 303 US 391, 397 . . . (1938). As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings. *See Murphy v. United States,* 272 US 630 . . . (1926); *Stone v. United States,* 167 US 178. . . (1897)."

---

[3] *See: United States v. Chambers* (3rd Cir. 1970), 429 Fed.2d 410; *United States v. Lauchli* (7th Cir. 1970), 427 Fed.2d 258, *certiorari denied,* 400 U.S. 868 (1970); *Amaya v. Beto* (5th Cir. 1970), 424 Fed.2d 363; *United States v. Markovich* (2nd Cir. 1965), 348 Fed.2d 238.

[4] *See, e.g.: United States v. D'Amato* (3rd Cir. 1970), 429 Fed.2d 1284; *Standlee v. Smith, supra.*

[5] *See, e.g.: People v. Smith,* 105 Ill. App.2d 14, 245 N.E.2d 13 (1969); *State v. Fisher,* 21 Ariz. App. 604, 522 Pac.2d 560 (1974); *State v. Hughes,* 200 N.W.2d 559 (Iowa, 1972).

[6] *See, e.g.: People v. Calais,* 37 Cal. App3d 898, 112 Cal. Rptr. 685 (1974).

*See also: Helvering v. Mitchell, supra,* at 397. Other courts have applied this reasoning in the context of parole and probation revocation. *See, e.g.: In re Dunham,* 127 Cal. Rptr. 343, 545 Pac.2d 255 (In Bank, 1976); *see generally:* Annot. 76 A.L.R.3d 571 (1977), and Annot. 76 A.L.R.3d 564 (1977).[7]

We also observe that the second ground for revocation of parole alleges that Flowers was in possession of a firearm on June 9, 1972. He was criminally charged with reckless use of a firearm, and the charge was dismissed, apparently for lack of evidence.

Collateral estoppel applies only where it is reasonably clear that the issue in question has in fact been decided. *See: Ashe v. Swenson, supra,* at 444. On the present record it is impossible to ascertain whether the question of possession was determined, or whether the charge was dismissed because there was insufficient evidence of recklessness. The burden of establishing collateral estoppel must fall on the party seeking the estoppel, and that burden has not been sustained.

Neither the principle of double jeopardy nor the doctrine of collateral estoppel is applicable to the facts of this case. The order on appeal is affirmed with regard to the first and second grounds for revocation.

## II.

The next issue on this appeal is whether an alleged violation of parole may be advanced and considered at the final revocation hearing without having been considered at the preliminary hearing.

Flowers contends that at the preliminary hearing no specific reference was made to the fourth charge which

---

[7] Evidence sufficient to support a conviction, on the other hand, would necessarily satisfy the lesser standard applicable to revocations. The defendant-parolee therefore may not relitigate a conviction at a revocation hearing. *Morrissey, supra,* at 484.

related to the reckless use of a firearm in Big Jimmy Green's Tap. The Department insists this charge was considered in substance at the November 9, 1973, preliminary hearing because it was implicit in one of the counts considered there. That count alleged:

"2. That on or about February 26, 1972, [Flowers was] in possession of a loaded rifle in a public place, to wit, Big Jimmy Green's Tap, 1432 West Vliet Street, Milwaukee, Wisconsin, and as a result said rifle was discharged at said time and place causing injury to another person all in violation of the laws of the United States, the State of Wisconsin and in violation of Rule 1 of [his] parole agreement, in violation of Rule 4 of [his] Parole Agreement."

With regard to this shooting incident, the preliminary hearing examiner found:

". . . that there was not probable cause to believe that [Flowers] had violated [his] agreement when [he was] *in possession* of a rifle at Big Jimmy Green's Tap, 1432 West Vliet Street, Milwaukee, WI." (Emphasis added.)

We believe the circuit court was correct when it observed that no probable cause determination was made on the fourth specified charge.

It is therefore necessary to determine whether a probable cause determination must be made with regard to each alleged parole violation, a question which goes to the nature of the preliminary revocation hearing. In *Morrissey, supra,* the Supreme Court observed that there is often a substantial time lag between the original arrest for an alleged parole violation and the final revocation hearing, and that the place of arrest may be distant from the institution to which the parolee is to be returned. "Given these factors," the court said:

". . . due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. *Cf. Hyser v. Reed,*

115 US App DC 254, 318 F2d 225 (1963). Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. . . ." *Morrissey, supra,* at 485.

The initial revocation proceedings serve two functions. First they provide assurance that there is reasonable justification for the deprivation involved in detaining the parolee for a final revocation hearing, and in returning him to the state from which he was paroled in the event his apprehension occurs outside the state. In addition, the requirement for notice and a prompt hearing in the vicinity of the arrest or alleged violation permits the parolee to prepare a defense and to put it on record before memories have dimmed and before he is removed to a distant state.

The first of these purposes is served by demonstrating any reasonable ground for incarceration. Once a prima facie case for revocation is made, the need to determine "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation," *Morrissey, supra,* at 487, has been met.

Thus a preliminary hearing is not required where grounds for detention are established in some other manner, for example, by a guilty plea to a subsequent criminal charge. *State ex rel. Niederer v. Cady,* 72 Wis.2d 311, 326, 240 N.W.2d 626 (1976). Incarceration on a subsequent conviction also eliminates the need for a preliminary hearing:

". . . both because the subsequent conviction obviously gives the parole authority 'probable cause or reasonable ground to believe that the . . . parolee has committed acts that would constitute a violation of parole conditions[,]' 408 US at 485, 33 L Ed2d 484, 92 S Ct 2593, and because issuance of the warrant does not immediately deprive the parolee of liberty. . . ." *Moody v.*

*Daggett,* 429 U.S. 78, *fn.* 7, 97 Sup. Ct. 274, 278, 50 L. Ed.2d 236 (1976), *citing Morrissey, supra.*

Once probable cause is established with regard to any charge, the function of the preliminary hearing in a parole revocation proceeding has been fulfilled. After it is determined that a parolee should be held for a final revocation hearing, the principal purpose of the preliminary hearing is satisfied, even though some alleged parole violations are not considered.

The appropriate test for the introduction of additional charges at a parole revocation hearing is whether the parolee has received adequate and proper notice of the additional charges prior to the holding of the revocation hearing.

There is no constitutional right to "pretest the prosecution's evidence" *State ex rel. Welch v. Waukesha Co. Cir. Court,* 52 Wis.2d 221, 225, 189 N.W.2d 417 (1971), in a parole revocation hearing. Nor is there a right to a preliminary hearing as a discovery device, an adverse examination, or a mechanism for the cross-examination of witnesses and preservation of testimony. *See: Bailey v. State,* 65 Wis.2d 331, 343, 344, 222 N.W.2d 871 (1974) ; *Whitty v. State,* 34 Wis.2d 278, 287, 149 N.W.2d 557 (1967).

Therefore a preliminary hearing need not be held with regard to every alleged violation, provided adequate notice is given prior to the parole revocation hearing. The circuit judge correctly declined to order dismissal of the fourth allegation.

### III.

The appellant next argues that because the preliminary hearing examiner found no probable cause with regard

to the third charge (possession of a firearm in a public place), the Department could not reinstate the charge and proceed to a revocation hearing on that charge. Partly for this reason, and partly for the reason that Flowers' parole officer had exceeded his authority in giving Flowers permission to possess a gun for hunting, the circuit judge found that the attempt of the Department to reinstate the charge was arbitrary and capricious, and ordered dismissal of the third charge.

As previously stated, the purposes of the preliminary hearing are satisfied without a showing of probable cause as to each charge ultimately presented at the revocation hearing. Where an issue has once been fully litigated and has been determined adversely to the Department, however, additional concerns are present. Repeated litigation of the same issue involves additional expense and disorder, and may create hardship on the parolee; the law generally prefers that controversies once decided on their merits remain in repose.

The charge of possession of a firearm in Big Jimmy Green's Tap raised a question as to whether the agent exceeded his authority when he granted Flowers permission to have a gun. It also posed a question as to whether the permission to possess a gun for hunting was precisely stated and carefully defined. As the United States Supreme Court observed in *Morrissey, supra,* at 479:

". . . The broad discretion accorded the parole officer is also inherent in some of the quite vague conditions, such as the typical requirement that the parolee avoid 'undesirable' associations or correspondence. . . ."

Flowers was required, under his parole agreement, to secure advance permission from his parole agent to own or carry any firearm. In the winter of 1971, after he expressed a desire to hunt rabbits, his agent gave him permission to possess and use a gun for hunting. The agent was not sure whether the gun was a shotgun or

a rifle. He did not impose any limitations as to when Flowers could carry the gun, or where he could carry it. Rather, he assumed that Flowers would not carry the gun within the city of Milwaukee, or carry it loaded into a public establishment. This assumption, although reasonable, was never stated. There was testimony to the effect that Flowers took the rifle to the tavern in an effort to sell it, because a prospective buyer had asked to see it.

On this evidence, the circuit judge ordered the third charge dismissed. The circuit court did not abuse its discretion in ordering dismissal of this charge.

However, we do not intend this case to stand for the proposition that once a preliminary hearing examiner has found no probable cause with regard to a particular charge, the Department can never, under any circumstances, reinstate the charge. Nor do we attempt to consider the facts and circumstances under which the Department could reinstate a charge. That case is not before us.

## IV.

Flowers contends that he was not afforded adequate notice of the revocation hearings and the alleged parole violations. *Morrissey* makes clear that due process requires reasonable notice for both the preliminary and final hearings:

"With respect to the preliminary hearing . . . , the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. . . ." *Morrissey, supra,* at 486, 487.

Among the minimum requirements of due process for the final hearing, the court included "written notice of

the claimed violations of parole. . . ." *Morrissey, supra,* p. 489.

In the instant case, notice of the March 28, 1974, revocation hearing was not mailed until March 22, 1974, and was not received until March 25, 1974. Flowers contends that this notice was prejudicial, (1) because it did not provide him adequate opportunity to interview witnesses and prepare his defense; (2) because he was unaware of the allegation of reckless use of a weapon; and (3) because he did not expect to be charged with possession of a weapon after the finding of no probable cause with regard to that charge.

On the facts of this case, however, it cannot be said that lack of timely notice was prejudicial to the cause of the defendant. After one day of hearing on March 28, 1974, the hearing was adjourned for three weeks. At the March 28th hearing, the state presented its case with regard to the barroom shooting. The hearing was continued to April 19th, and again to April 22, 1974. These adjournments were to the benefit of the defendant. He was able to prepare his case with full knowledge of the case of the state concerning the incident in Big Jimmy Green's Tap.

Although Flowers insists that he was unaware that he would be charged with possession of and reckless use of a weapon, it cannot be said that he was prejudiced by the notice of thse charges. The allegation of possession had been noticed, raised and disputed at the November 9, 1973, preliminary. In addition, as already stated, the allegation considered at the preliminary was broadly worded, and advised the defendant that the Department considered his possession and use of a loaded firearm in a public place as a violation of his parole.

Moreover, a criminal charge of reckless use of a weapon, stemming from the same incident, had been pending, and had been dismissed for lack of timely

prosecution shortly before the revocation hearing. Because these charges had been advanced at the preliminary and in the criminal prosecution, it is unlikely that Flowers and his counsel had not made every effort to gather evidence and locate witnesses for use in defense against the charges. On the facts of this case, therefore, there is no significant probability that the short notice had a prejudicial effect. The fact is that after the state presented its evidence with regard to the barroom incident, the defendant had three weeks in which to prepare his response.

## V.

Flowers next contends that he was not afforded a speedy revocation hearing. Following the November 9, 1973 preliminary hearing, Flowers petitioned for a writ of habeas corpus. On January 24, 1974, after the petition was denied, he informed the Department that he "was ready for the hearing." The hearing was begun on March 28, 1974. Flowers contends that the delay of approximately two months was unreasonable.

This contention cannot be sustained in view of the Supreme Court's comments in *Morrissey, supra,* at 488, that:

". . . The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable."

Despite this apparently dispositive statement, Flowers asserts that the delay was unreasonable because: (1) It reflected a deliberate design to hold him in custody until his mandatory release date, which was approaching; (2) it gave the state some "tactical advantage" in a pending criminal prosecution; and (3) he was not informed of the reason for the delay. The first of these contentions has no foundation in the record; the second is not clearly

explained; and the third is irrelevant to the present question.

The record shows the hearing was delayed to await trial on a pending criminal charge. The criminal charge arose from the incident in Big Jimmy Green's Tap. In this setting, Flowers could well have been prejudiced if the hearing had *not* been delayed. Because the proceedings predated this court's recent decision in *State v. Evans, supra,* any testimony he had given at the hearing would have been admissible against him at the criminal trial. He might therefore have felt compelled to remain silent at the hearing, and his silence might itself have been grounds for revocation.

The decision to delay the hearing was consistent with the American Bar Association's recommendation that probation revocation proceedings based solely on a pending criminal charge should ordinarily be delayed until the criminal charge is resolved. ABA *Standards Relating to Probation,* sec. 5.3, pp. 62, 63.

In *State v. Evans, supra,* this court resolved the self-incrimination concerns which underlie the ABA recommendation, and which support the delay in the instant case, by holding that inculpatory statements at a revocation hearing are not admissible at a later trial, except for purposes of impeachment or rebuttal. Because problems of self-incrimination have now been sharply reduced, other concerns may, in some cases, outweigh any interest in postponement. This determination can only be made on a case-by-case basis.

The circuit court correctly ruled, therefore, that the decision to delay the hearing was not unreasonable or prejudicial.

## VI.

Flowers' final contention is that there was insufficient evidence to support the allegation that he absconded

from the state. The circuit court rejected this contention, finding that Flowers had not sustained the substantial burden of proof in such actions:

". . . In *State ex rel. Johnson v. Cady* (1971), 50 Wis.2d 540, 550, 185 N.W.2d 306, this court set forth the standard of judicial review on certiorari in a probation revocation proceeding when the sufficiency of the evidence to support a probation revocation is at issue to be as follows:

" '. . .We further conclude that the scope of the review shall be addressed to whether the department's action was arbitrary and capricious and represented its will and not its judgment.

" ' "The board is presumed to have had before it information which warranted the order of revocation, and its determination of the matter is conclusive unless the prisoner can prove by a preponderance of the evidence the board's action was arbitrary and capricious. That burden rests squarely on the prisoner, and if he fails to sustain the burden, the courts will not interfere with the board's decision. . . ." ' " *State ex rel. Hanson v. H&SS Dept., supra*, at 375, 376.

The evidence supports the charge of absconding. Flowers reported to the office of his parole agent on August 3rd or August 4th of 1972. Because his regular agent was not in the office, Flowers spoke with another agent. Flowers testified that he told the agent he was destitute and that he was going to visit his wife in St. Paul, Minnesota, to get some money and a place to stay. The substitute agent did not recall any such statement. Flowers' regular agent testified that he would normally have received travel permit forms if any out-of-state travel had been authorized, but that he received no such forms.

Flowers denied knowledge that a preliminary revocation hearing had been scheduled for August 7, 1972. The substitute agent testified, however, that he gave Flowers a letter notifying him of the hearing. A carbon copy of the letter was introduced. The copy, dated

August 3, 1972, bears a handwritten acknowledgement, in Flowers' name, of receipt of the original.

Flowers did not appear at the August 7, 1972, preliminary hearing. He was arrested in St. Paul that evening. Although he now contends that his whereabouts in Minnesota were known to the Department, there can be no suggestion that the Department was informed of his subsequent travels to and in Canada. On this evidence, it cannot be said that the appellant has sustained the burden described in *State ex rel. Johnson v. Cady, supra.* The circuit court properly upheld the finding that Flowers had absconded.

*By the Court.*—Order affirmed.