OPINION
Defendant-Appellant Timothy A. Wellbaum appeals his conviction for escape in the Champaign County Court of Common Pleas. However, in order to understand the issues involved in this case, we must begin our discussion with Wellbaum's conviction for gross sexual imposition in 1997. For that conviction, Wellbaum was sentenced in the Common Pleas Court of Shelby County to seventeen months in prison and advised he would be subject to a maximum of five years post-release control. While serving his seventeen-month prison term, on August 18, 1998, Wellbaum executed a conditions of supervision document which provided for a five-year period of post-release control.
On March 8, 1999, Wellbaum was released from prison and transported to the Logan County Sheriff for unrelated outstanding misdemeanor charges. After appearing in court on those charges and being released on the same day, Wellbaum contacted the Adult Parole Authority ("APA") office in Lima, Ohio. Michael Bowers with the APA advised Wellbaum to go to the previously approved Schearer address in Champaign County and stay there until contacted by his parole officer, Rick Harmon.
The following day, March 9, Rick Harmon visited the Schearer residence and found no one home. He left a business card advising Wellbaum to contact him on or before March 11, 1999. Meanwhile, a telephone message was left at the APA on March 9 purporting to be from Wellbaum, advising he was at a pay phone and would call back. The message did not leave an address or phone number where he could be contacted. On March 11, Harmon contacted Mr. Schearer, who advised him that Wellbaum was not residing at his residence and he had no idea how to contact him. The APA declared Wellbaum a parole violator at large on March 12, 1999 because they had lost contact with him.
Around March 24, 1999, Parole Officer Madigan located Wellbaum while on another assignment. Madigan telephoned Wellbaum and asked him to report in the following day. On March 25, 1999, Wellbaum presented himself to the Logan County parole office and was arrested. Shortly thereafter, the APA charged Wellbaum with violation of post-release control and held a hearing on these charges on April 13, 1999. At the hearing, Wellbaum admitted violating the conditions of supervision and he was found guilty by the hearing officer. Wellbaum was sanctioned 110 days in the Logan County Jail. His sanction was completed on July 12, 1999.
Meanwhile, on April 15, 1999, the Champaign County Prosecutor's Office indicted Wellbaum for escape for his failure to reside at the approved Champaign County address as required by his post-release control. Trial to the court was held on the charge of escape on July 29, 1999. During the trial, Wellbaum raised a motion to dismiss or alternatively, a Rule 29 motion for acquittal, raising the issues of venue, speedy trial, the unconstitutionality of R.C. 2967.28, and double jeopardy. The court overruled the motion and found Wellbaum guilty of escape. On December 28, 1999, he was sentenced by judgment entry to three years of community control sanctions. Wellbaum appeals this conviction and sentence raising the following assignments of error:
 The trial court erred in finding that the offense of escape occurred within the territorial jurisdiction of the Champaign County Prosecuting Attorney and the Champaign County Court of Common Pleas; the Champaign County Court of Common Pleas was an improper venue because Appellant did not have significant nexus to Champaign County.
 The trial court erred in finding that Appellant was under detention in that Ohio Revised Code Section 2967.28 is unconstitutional because it violates both the Separation of Powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions., Appellant's conviction of, and sentence for, escape violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution, and the Double Jeopardy Clause of Section 10, Article I of the Ohio Constitution.
 The trial court erred in finding that Appellant was brought to trial within the time period prescribed by the Ohio Revised Code Section 2945.71.
 The trial court erred in finding that the State proved beyond a reasonable doubt that Appellant was under detention in Champaign County and in rejecting the affirmative defense to the offense of escape provided within the Ohio Revised Code Section 2921.34(B); the conviction was against the weight and sufficiency of the evidence.
 I
Due to the nature of the assignments of error, we will address the fifth and first assignments together. Wellbaum's fifth assignment of error contains three separate arguments. First, he claims that the evidence was insufficient to support the conviction, partially because the State failed to prove venue, which also incorporates his first assignment of error. Second, he contends that the trial court's decision was against the manifest weight of the evidence. Finally, he argues that the trial court erred by not allowing the affirmative defense found in R.C. 2921.34(B).
When an appellant alleges a sufficiency of the evidence error, the court must determine whether the evidence is "legally sufficient as a matter of law to support the jury verdict." State v. Clemons (1998),82 Ohio St.3d 438, 444 (citations omitted). When presented with this question, an appellate court's standard "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. More precisely, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In the present case, the State was required to prove beyond a reasonable doubt that Wellbaum committed the crime of escape. Elements of escape include: (1) knowing he was under detention or being reckless in that regard, and (2) purposely breaking or attempting to break that detention, or purposely failing to return to detention. R.C.2921.34(A)(1). The definition for detention includes, "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution." R.C. 2921.01(E). The escape statute was amended effective March 17, 1998 specifically to allow parolees under the authority of the APA to be included in this definition and prosecuted for escape. State v. Estis
(June 11, 1999), Lucas App. No. L-98-1373, unreported, p. 2.
The record is clear that Wellbaum was under post-release control beginning March 8, 1999 upon his release from prison. Wellbaum's signature on the conditions of supervision document confirms that he had knowledge of the post-release control. These conditions required Wellbaum to remain under the supervision of the APA for five years. As part of this supervision, the APA had approved and Wellbaum had agreed to reside at the home of John Schearer in Champaign County upon his release. Additionally, the State presented testimony that an employee of the APA spoke with Wellbaum on March 8, 1999 and advised him to report to the Schearer address and stay there until his parole officer contacted him. Although there was vague testimony that Wellbaum stayed very briefly at the Schearer address, it is not disputed that the APA was never able to contact him there.
Wellbaum argues that he never resided at the Schearer address, nor entered Champaign County, and therefore venue was improper. In criminal cases, venue must be proven unless it is waived by the defendant. Statev. Headley (1983), 6 Ohio St.3d 475, 477. R.C. 2901.12(G) provides that venue is proper in any jurisdiction where the offense or any element thereof occurred. Accordingly, venue may be proper in more than one jurisdiction.
To decide whether venue is appropriate, we must determine if any element of the offense of escape occurred within Champaign County. As explained previously, the elements of escape are: 1) knowing oneself to be under detention or being reckless in that regard; and 2) either (a) purposely breaking or attempting to break detention, or (b) failing to return to detention. R.C. 2921.34(A)(1). According to Wellbaum's conditions of supervision, he was not to change his address without notifying the APA. Wellbaum and the APA had agreed he would reside at the Schearer address in Champaign County. After speaking with Wellbaum on March 8 and advising him to report to this address and stay there until contacted, the APA was never able to contact Wellbaum at that address or anywhere else until he was arrested on March 25. Therefore, according to the terms of the statute and the definition of detention, he broke detention by failing to remain under the supervision of the APA in Champaign County. As a result, venue would be proper in Champaign County.
Further, the State presented sufficient evidence on both elements of escape to support a conviction. It was clear from the record that Wellbaum knew he was under the supervision of the APA, and as part of that supervision, was required to reside at the Schearer address in Champaign County. Also, as mentioned previously, the State presented sufficient evidence that Wellbaum broke detention by failing to report to that address, or contact the APA with his whereabouts. Accordingly, a rational trier of fact could have found beyond a reasonable doubt that Wellbaum was guilty of escape.
A separate inquiry is employed when determining whether a conviction is against the manifest weight of the evidence. When reviewing a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. Id.
In reviewing the record in this case, the trial court's decision was not against the manifest weight of the evidence. First, as mentioned before, the State presented sufficient evidence to support Wellbaum's conviction. Moreover, the defense presented no evidence to dispute the State's case, creating no conflicts in the evidence to be resolved.
Finally, Wellbaum argues that the trial court erred by not allowing the affirmative defense found in R.C. 2921.34(B). The statute provides:
 Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility. In the case of any other detention, irregularity or lack of jurisdiction is an affirmative defense only if either of the following occurs:
 (1) The escape involved no substantial risk of harm to the person or property of another.
 (2) The detaining authority knew or should have known there was no legal basis or authority for the detention.
In his brief, Wellbaum skips directly to the two elements which allow the defense of irregularity to be employed, without explaining how his detention is not pursuant to judicial order. At the time of his escape, Wellbaum was under the supervision of the APA based on his judicially-imposed post-release control. As detention is defined in R.C.2921.01(E), this supervision is considered detention. Clearly, Wellbaum was under detention pursuant to a judicial order, and therefore, the irregularity defense could not be utilized.
Based on the foregoing, the evidence was sufficient to support a conviction, the verdict was not against the manifest weight of the evidence and the trial court did not err in disallowing the affirmative defense of irregularity. Accordingly, Wellbaum's first and fifth assignments of error are overruled.
 II
In his second assignment of error, Wellbaum argues that R.C. 2967.28
violates the separation of powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions. This issue was very recently addressed by the Ohio Supreme Court in Woods v. Telb (2000), 89 Ohio St.3d __. The Supreme Court found that the post-release control statute does not violate the separation of powers doctrine or the Due Process Clauses.
The defendant in Woods argued that the delegation of power to the APA under the post-release control statute usurped judicial authority. The court held that the present delegation of power to the APA was no different than it was under the former parole system. In the past, the judge could control the maximum prison sentence, but had no control over when parole would be granted within that specified period of time. Further, the judge could not control the conditions or length of parole supervision. Presently, the judge issues a sentence and advises the defendant of the length of post-release control he may receive under the statute. However, once the defendant is released from prison, the APA determines the period and conditions of supervision to be imposed on the individual.[1] Just as with parole, the judge has no control over this aspect of the defendant's sentence. Id.
Furthermore, the court points out that the post-release control statute is clearly distinguishable from the bad-time statute, R.C. 2967.11, which was held to violate the separation of powers doctrine in State exrel. Bray v. Russell (2000), 89 Ohio St.3d 132, 135. The bad-time statute allowed the parole board to act "as judge, prosecutor, and jury," for an inmate's conduct that should instead be prosecuted in a court of law, whereas post-release control is part of the original sentence issued by the court. Woods, 89 Ohio St.3d at __. Additionally, the court found that the parole board's discretion in imposing post-release control sanctions did not interfere with the trial court's ability to impose a sentence since the sanctions focus on behavior modification and not simply punishment. Id. As a result, the APA's discretion in administering post-release control sanctions does not interfere with the authority of the judicial branch, and thus does not violate the separation of powers doctrine. Id.
The Woods court further found that R.C. 2967.28 does not violate the Due Process Clauses of the United States and Ohio Constitutions. In fact, the statute requires the APA to ensure procedural due process protections set forth by the United States Supreme Court in Morissey v.Brewer (1972), 408 U.S. 471. See R.C. 2967.28(E)(5). As in Woods, there is no dispute in this case that Wellbaum was provided these protections.
However, the court of appeals in Woods found that even if the procedural protections are afforded, the APA should not conduct the post-release control violation hearing. In Goldberg v. Kelly (1970),397 U.S. 254, the United States Supreme Court concluded that "the fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner." Woods, supra, at __. Applying this rationale to parole revocation hearings, theMorissey Court required that a person who was not directly involved in the case must make the determination as to whether reasonable grounds exist for parole revocation. Id., citing Morissey, supra at 485. The Court did not require that the determination be made by a judicial officer. It appears in the present case that the post-release control violation hearing was held by a neutral and detached APA officer, and therefore satisfies the requirements set forth by the Supreme Court.
Accordingly, Wellbaum's second assignment of error is overruled as R.C.2967.28 does not violate the separation of powers doctrine or the Due Process Clauses of the United States or Ohio Constitutions.
 III
Wellbaum argues in his third assignment of error that his trial and conviction for escape following his post-release control violation sanction for the same conduct violates the Double Jeopardy Clauses of the United States and Ohio Constitutions.Prohibition against double jeopardy protects individuals against multiple prosecution and multiple punishments for the same offense. State v. Gustafson (1996),76 Ohio St.3d 425, 432. The present case involves one administrative proceeding and one prosecution, so the only possible double jeopardy issue is the imposition of multiple punishments. To determine whether multiple punishments are involved, the United States Supreme Court has established a two-part test: (1) whether the legislature intended the penalizing mechanism to be criminal or civil; and (2) even when the legislature intended it to be civil, "`whether the statutory scheme was so punitive either in purpose or effect, * * * as to `transform what was clearly intended as a civil remedy into a criminal penalty.'" State v.Uskert (1999), 85 Ohio St.3d 593, 597, citing United States v. Ward
(1980), 448 U.S. 242, 248. In analyzing the second part of this test, the Supreme Court has enunciated guidelines: "(1) `[w]hether the sanction involves an affirmative disability or restraint,' (2) `whether it has historically been regarded as punishment,' (3) `whether it comes into play only on a finding of scienter,' (4) `whether its operation will promote the traditional aims of punishment-retribution and deterrence,' (5) `whether the behavior to which it applies is already a crime,' (6) `whether an alternative purpose to which it may rationally be connected is assignable for it,' and (7) `whether it appears excessive in relation to the alternative purpose assigned.'" Id. at 598, citing Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168-69. However, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id.; see, also, Hudson v. United States (1997), 522 U.S. 93,100.
The statute involved in the present case is R.C. 2967.28, the post-release control statute, which vests jurisdiction with the APA to monitor individuals during their period of post-release control. Because the APA is an administrative body, the statute is prima facie evidence that the General Assembly intended the sanctions imposed to be civil in nature rather than criminal. See Hudson, supra, at 103. Therefore, we must determine if the sanction, in this case jail time, is so punitive as to be considered criminal punishment.
In answering this question, we first turn to the recent Ohio Supreme Court decision of Woods v. Telb (2000), 89 Ohio St.3d __. Although Woods
focused on the effect of the separation of powers doctrine and the Due Process Clauses on the post-release control statute, some language employed by the court is helpful in our analysis. While discussing the separation of powers doctrine, the court explained that at the time of felony sentencing, the trial court imposes a definite prison term as well as a period of post-release control. In addition, the trial judge informs the individual that violation of the conditions imposed under post-release control could result in essentially "time and a half" of the original prison sentence. Because "post-release control is part of the original judicially-imposed sentence," the Woods court maintained that the statute is not a significant departure from the prior system of parole. Id. Further, as with parole revocation, post-release control sanctions are "aimed at behavior modification in the attempt to reintegrate the offender safely into the community * * *." Id.
Prior to the adoption of the post-release control statute, courts consistently held that sanctions imposed by civil or administrative proceedings did not trigger double jeopardy as to preclude subsequent criminal prosecutions. Gustafson, supra, at 432, citing Helvering v.Mitchell (1938), 303 U.S. 391, 399; Ward, supra, at 248. More specifically, courts have found that parole revocation and criminal prosecution for the same conduct does not trigger the Double Jeopardy Clause. See, e.g., United States v. Hanahan (C.A.7, 1986), 798 F.2d 187,189-90; State ex rel. Flowers v. Dept. of Health (1978), 260 N.W.2d 727,733; Mayrides v. Ohio State Adult Parole Auth. (April 30, 1998), Franklin App. No. 97APE08-1035, unreported, p. 4; State v. Hollis (May 15, 1997), Cuyahoga App. No. 70781, unreported, p. 5. These courts explained that the purpose of a parole revocation proceeding is not to punish a criminal defendant, but instead to determine if parole has been violated. Hanahan, supra, at 190. Essentially, an individual on parole or post-release control is in the constructive custody of the APA, "subject to the forfeiture of his liberty for violation of the conditions of his parole." Flowers, supra. Therefore, the "liberty" experienced by individuals on parole, probation, or post-release control is more appropriately labeled "conditional liberty," dependent on compliance with all conditions of supervision. Id.
Parole or probation, as well as post-release control, are "intended to foster the reintegration of the individual into society at the earliest opportunity." Flowers, supra, at 732. If an individual is sent back to jail as a result of parole revocation, it is not punishment for the new crime, but a remedial measure reinstating his original sentence for the first crime committed. Hollis, supra, at p. 5; Flowers, supra. Any jail time served as a result of parole revocation is a "continuing consequence of the original conviction." Flowers, supra, at 732. As explained by the Woods Court, a period of post-release control, as well as any sanctions administered as a result of a violation, are also imposed by the trial court as part of the original sentence. Woods,supra. Therefore, like with parole, any jail time imposed by the APA as a sanction for a post-release control violation is also a manner of serving the sentence for his original conviction.
Recently, the Twelfth District Court of Appeals addressed the same issue before us today. In State v. Holder (June 12, 2000), Warren App. No. CA99-09-117, unreported, the defendant was sanctioned to jail time for a post-release control violation, then subsequently indicted for escape. When examining whether regulation by the APA was so punitive as to constitute criminal punishment, the court analogized the post-release control sanctions with parole and probation revocation. In so doing, the court found that the sanctions issued for post-release control violations were remedial in nature, despite the necessarily punitive aspects. Similar to parole and probation revocation, the court further held that the sanction issued by the APA was not punishment for the violation, but rather reinstatement of part of his original sentence for failure to obey his conditions of supervision. The Holder court concluded that the sanctions were not criminal punishment and therefore, the subsequent prosecution and punishment for escape did not violate the Double Jeopardy Clause. Holder, supra, at p. 9.
Based on the foregoing discussion, we agree with the Holder court and find that Wellbaum's conviction and sentence for escape following his post-release control violation sanctions do not violate the Double Jeopardy Clause. Accordingly, his third assignment of error is overruled.
 IV
In his fourth assignment of error, Wellbaum argues that the trial court erred by not finding his speedy trial rights had been violated. Ohio's speedy trial statute provides that an individual must be brought to trial within 270 days of indictment, however "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E) (emphasis added). Several cases have held that when an individual is incarcerated for a parole violation, as well as the pending charge, the triple count provision of the statute is not invoked. See, State v. Jones (1992), 81 Ohio App.3d 348,350-51; State v. Dunkins (1983), 10 Ohio App.3d 72, 75; State v.Phillips (1990), 69 Ohio App.3d 379, 381.
Wellbaum was incarcerated on March 25, 1999 when he was arrested as a parole violator at large. The APA sanctioned him to 110 days in jail, which he served until July 12, 1999, at which time he was transferred to Champaign County Jail. After he was sanctioned, Wellbaum was indicted on April 15 for escape and tried on July 29, 1999. It appears that only eighteen days were spent in jail solely on the pending charge, and therefore these are the only days subject to the triple count provision. Consequently, Wellbaum was tried well within the 270 days required by the speedy trial statute. Wellbaum's fourth assignment of error is overruled.
 __________________ BROGAN, J.
FAIN, J., and KERNS, J., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting By Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] For certain felonies, the period of post-release control is mandated by statute. Otherwise, the APA has discretion R.C. 2967.28(B) (C).