**In the Matter of Donald J. WEBER and Roxanne M. Weber, Debtors.**

**Michael C. ABLAN and Patti J. Ablan, Plaintiffs,**

**v.**

**Donald J. WEBER and Roxanne M. Weber, Defendants.**

**Adv. No. 85–0317.**

United States Bankruptcy Court, W.D. Wisconsin.

June 18, 1986.

Marvin H. Davis, Joanis, Davis, Ablan & Joanis, La Crosse, Wis., for plaintiffs.

Richard C. Thompson, Phelps, Thompson & Koby, Ltd., La Crosse, Wis., for defendants.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

This is an adversary proceeding to determine the nondischargeability of a debt owed to the plaintiff, Michael C. Ablan ("Ablan"). The debtor-defendants have moved for summary judgment on the grounds that no material facts are in dispute and that they are entitled to judgment as a matter of law.

The essence of Ablan's complaint is that Donald J. Weber ("Weber") on behalf of a partnership, Weber Brothers, Inc. ("Weber Farms"), sold certain cows leased by Ablan to Weber Farms without either the knowledge or consent of Ablan and thereafter fraudulently converted the proceeds to his own use. Weber contends that he had an agreement with Ablan, to sell the cows in 1981 and retain the proceeds (except for $5,000.00 paid to Ablan in cash), so that Ablan would be paid in 1982 and avoid additional 1981 tax liability. Weber further contends that there was never any agreement requiring him to segregate or hold in trust funds owing to Ablan. Both sides seem to agree that the ultimate questions of fact necessary to a resolution have been determined in prior state court litigation, and that principles of collateral estoppel bar relitigation of such facts here.

### I.

■ Under the doctrine of collateral estoppel, a judgment on the merits in a prior lawsuit precludes relitigation by a party to the first action of issues actually litigated and necessary to the outcome of the first suit. *Warren v. McCall*, 709 F.2d 1183, 1184 (7th Cir.1983); *In Re Wilcher*, 56 B.R. 428, 435–36 (Bankr.N.D.Ill.1985); *In Re Smith*, 37 B.R. 996, 998 (Bankr.M.D.Tenn. 1984). *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed. 2d 552 (1979). The doctrine of collateral estoppel prevents the parties to an earlier suit from relitigating issues actually decided and necessary to the outcome of the first suit in a later suit involving a different cause of action. *Parklane Hosiery, supra, In Re Smith, supra*, 37 B.R. at 998.

■ The Supreme Court has approved the use of collateral estoppel to preclude relitigation of fact questions in dischargeability proceedings. *Brown v. Felsen*, 442 U.S. 127, 129, 139, n. 10, 99 S.Ct. 2205, 2208, 2213, n. 10, 60 L.Ed.2d. 767 (1979). The bankruptcy court, however, has exclusive jurisdiction to determine the ultimate legal question of dischargeability, and is not barred by prior state court determinations of law. *See In Re Smith, supra*, 37 B.R. at 998. This does not mean that the bankruptcy court must redetermine all underlying facts.

> [W]here the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceeding or that the bankruptcy court will be any more fair or accurate than the state court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This Court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues.

*Id.,* quoting *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981). *See In Re Shuler,* 722 F.2d 1253, 1255–56 (5th Cir.1984); *cert. den.,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

Three elements must be present for collateral estoppel to apply: (1) the precise issue sought to be precluded was raised in the prior litigation; (2) the issue was actually litigated; and (3) resolution of the issue was necessary to the prior judgment. *See In Re Smith, supra,* 37 B.R. at 998. In addition it must appear that the party to be bound had a "full and fair opportunity to litigate the issue … and that application of the doctrine will not result in an injustice under the particular circumstances of the case." *Butler v. Stover Bros. Trucking Company,* 546 F.2d 544, 551 (7th Cir. 1977). *See Parklane Hosiery, supra,* 439 U.S. at 328, 99 S.Ct. at 650; *In Re Wilcher, supra,* 56 B.R. at 436.

In this case, Weber argues that a finding of nondischargeability under 11 U.S.C. § 523(a)(4) is completely precluded by virtue of the factual determinations made by the state court. Ablan argues that nondischargeability is mandated by virtue of other facts found by the state court. In the state court action, the parties herein raised and fully litigated all the factual issues necessary to resolution of the instant dischargeability contest. The resolution of those issues was necessary to the outcome of that action.

Based on the findings of the Honorable Kenneth Houck, dated April 3, 1985, in Vernon County Circuit Court, State of Wisconsin, file no. 83–CV–229, wherein Michael and Patti Ablan were plaintiffs, and Westby Coon Valley State Bank and Donald J. and Roxanne M. Weber, among others were defendants, the parties herein are now collaterally estopped from denying the following facts:

1. Ablan leased thirty-eight (38) cows to Weber Farms. Weber was, at all material times, the president of Weber Farms.

2. On behalf of Weber Farms, Weber agreed to sell cows including the thirty-eight (38) cows he was leasing from Ablan to Baker Farms, Inc.

3. The written agreement made by Weber with Baker Farms, Inc. represented that the owner of all the cows was Weber Farms. The agreement made no reference to any interest in any of the cows on the part of Ablan.

4. Sometime in August, 1981, prior to the sale of the cows, Ablan learned of the sale and did not stop or veto the sale. Ablan said he did not wish to receive proceeds of the sale until 1982.

5. Weber received from Baker Farms, Inc., the total sum of one hundred and ninety-five thousand dollars, ($195,000.00), for the sale of the cattle, including the thirty-eight (38) that belonged to Ablan.

6. Weber received the proceeds of the sale in two installments: fifty thousand dollars ($50,000.00) in the first installment, and the balance of one hundred and forty-five thousand dollars ($145,000.00) at the end of October, 1981.

7. Ablan received five thousand dollars ($5,000.00) from the proceeds of sale.

8. Weber paid forty thousand dollars ($40,000.00) of the sale proceeds on the indebtedness of Weber Farms, to the Westby Coon Valley State Bank, an obligation that Donald J. and Roxanne M. Weber were personally responsible for as guarantors and co-signers.

9. Ablan did nothing to notify the bank of his interest in the cows or any of the proceeds paid to or deposited in the bank.

10. The second installment of one hundred and forty-five thousand dollars ($145,000.00) was deposited by Weber in the checking account of Weber Farms at Coon Valley State Bank. No part of those funds was segregated for the purpose of paying Ablan his part of the sale proceeds for the sale of his cattle.

11. Prior to the sale of the cattle Weber represented to the Westby Coon Valley State Bank, in a letter, that his corporation owned all of the cows subject to the sale agreement and that the entire proceeds thereof were to be applied on the debt of Weber Farms to that bank.

12. Weber never told the Westby Coon Valley State Bank that Ablan owned any of the cows that were being sold.

13. Pursuant to Weber's letter to Westby Coon Valley State Bank, the bank removed one hundred and thirteen thousand dollars ($113,000.00) from Weber Farms checking account and applied it to the balance due on the Weber Farms loan.

14. After the loan payment was removed, approximately thirty-two thousand dollars ($32,000.00) remained in the checking account.

15. The remaining funds were in part proceeds from the sale of Ablan's thirty-eight (38) cattle.

16. Weber used the remaining thirty-two thousand dollars ($32,000.00) in the Weber Farms' checking account for the purpose of paying corporation and personal pre-existing bills.

17. Weber had a personal pecuniary interest in the payment of all such bills.

18. Weber made no attempt of any kind to impose any kind of trust in favor of Ablan in respect to said thirty-two thousand dollars ($32,000.00).

19. Weber's total testimony as to how he disposed of said thirty-two thousand dollars ($32,000.00) was a fabrication.

20. Ablan knew what was going on and did nothing to protect himself.

■ Although certain of the facts recited above could, standing in isolation, support a finding of nondischargeability, a careful review shows that the debt to Ablan is dischargeable. Paragraphs 4, 9, and 20 in particular refute Ablan's contention that he was unaware of the sale, or of the fact that Donald Weber was to retain the proceeds until 1982.

The above facts make clear that Weber did not commit "fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4). The "fiduciary capacity" requirement has been limited to technical or express trusts and not constructive trusts arising out of the act of wrongdoing itself. *In Re Gumieny*, 8 B.R. 602, 605 (Bankr.E.D.Wis.1981); 3 *Collier on Bank-*

*ruptcy* ¶ 523.14, p. 523–108 (15th ed. 1985). No express trust agreement was ever entered into between Ablan and Weber.

Similarly, Ablan's accusation of embezzlement is rebutted by the finding that he was aware at all relevant times of the sale of his cattle, under the apparent ownership of Weber, and yet did nothing to protect his interest. Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted, or who has received lawful possession of the same. *In Re Gumieny, supra,* 8 B.R. at 605. Here Weber was acting in agreement with Ablan to sell the cattle and retain the proceeds until 1982 for tax purposes. There was no "fraudulent appropriation" by Weber as to Ablan. Even if Weber's actions were less than upright, the knowing acquiesence of a creditor leading a debtor to believe his course of conduct is proper, as well as principles of laches and waiver, is a bar to the instant action. *Id.* at 604 and cases cited therein.

The facts found by the circuit court compel the conclusion that Ablan in effect made an ill-conceived, unsecured loan to Weber on the faith of the latter's promise to repay. The failure by Weber to honor his promise to repay cannot form the basis for a finding of nondischargeability. The debtors are entitled to summary judgment in their favor.