**In the Matter of William W. WAGNER, Debtor.**

**Carol C. MOLLDREM and the Estate of Conrad F. Molldrem, Plaintiffs,**

v.

**William W. WAGNER, Defendant.**

**BLUE CROSS/BLUE SHIELD UNITED OF WISCONSIN, Plaintiff,**

v.

**William W. WAGNER, Defendant.**

**Adv. Nos. 86–0345–7, 87–0003–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 28, 1987.

Mark Bromley, Kinney, Urban, Schrader, Bromley & Kussmaul, Lancaster, Wis., for plaintiffs.

Galen W. Pittman, John & Flaherty, S.C., La Crosse, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

On February 12, 1983, William Wagner struck Conrad Molldrem in the head four times with an iron bar. As a result of his injuries Conrad died. Wagner was prosecuted for first degree murder but was acquitted. In 1985, the plaintiffs herein, Conrad's widow, Carol, his estate, and his medical insurer Blue Cross/Blue Shield brought a wrongful death suit against Wagner in Circuit Court for Grant County. The case resulted in a special jury verdict finding Wagner had committed a battery upon Conrad. The jury awarded the estate $37,945.64, Carol $275,000.00, and Blue Cross/Blue Shield $35,944.19. The jury awards were confirmed by the trial court in judgments entered on April 22, 1985.

Shortly after the verdict was rendered, Wagner gave mortgages on his farm to his brother and the law firm that had represented him in the Grant County suit. Later he assigned milk income from his farm and half the proceeds from the sale of some commercial property to his wife. The mortgages and the judgments exceeded Wagner's net worth. In addition, the milk assignment dealt away his major source of income. In order to set aside the mortgages and assignments as preferences the judgment creditors filed an involuntary petition under chapter 7 on May 21, 1985. *See In re Wagner,* 808 F.2d 542 (7th Cir. 1986).

This case is now before the court on the plaintiffs' motion for a summary judgment holding Wagner's debts to the plaintiffs nondischargeable. Plaintiffs allege that the Grant County judgments constitute debts for willful and malicious injury within section 523(a)(6) of the Bankruptcy Code. Plaintiffs argue that the willfulness and malice of the injury were actually litigated and necessarily decided by the jury which found Wagner had committed battery and that Wagner is collaterally estopped from relitigating any issue under section 523(a)(6). In support of their motion, plaintiffs have submitted briefs, a certified copy of the special verdict and judgment, an affidavit from counsel and relevant portions of the trial transcript.

In opposition to the motion Wagner has filed an affidavit of counsel and a brief. Wagner admits a debt is owed to the plaintiffs but contends that collateral estoppel is inapplicable in this case.

The initial question is whether the application of collateral estoppel is appropriate in a dischargeability determination pursuant to section 523(a)(6). If the doctrine may be applied, it must then be determined whether the necessary prerequisites for the application of collateral estoppel have been met in this case.

Until recently this has been an unsettled area of the law. Even the prior decisions of this court appear to be inconsistent.[1] The difficulty is largely due to dicta in the Supreme Court decision of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown,* the court held that res judicata did not apply in dischargeability determinations pursuant to sections 523(a)(2), (4) and (6)[2] given the Congressional grant to the bankruptcy court of exclusive jurisdiction over dischargeability determinations. The Court, however, expressly reserved ruling on the application of the narrower principle of collateral estoppel in the dischargeability context. In footnote 10, the Court expressed its view on collateral estoppel:

This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana v. United States,* 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5 [99 S.Ct. 645, 649 n. 5, 59 L.Ed.2d 645] (1979); *Cromwell v. County of Sac,* 94 U.S. [4 Otto] 351, 352–353 [24 L.Ed. 195] (1877). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other

---

1. Compare *In re Trewyn,* 12 B.R. 543 (Bankr.W. D.Wis.1981) and *In re Brink,* 27 B.R. 377 (Bankr.W.D.Wis.1983) (declining to apply collateral estoppel in dischargeability proceedings under section 523(a)(2)(A)) with *In re Weber,* 81 B.R. 482 (Bankr.W.D.Wis. 1986) (applying collateral estoppel in dischargeability proceeding).

2. Sections 17a(2), (4) and (8) under the Bankruptcy Act of 1898. In *Brown,* the court was specifically dealing with sections 17a(2) and (4). The reasoning clearly applies to 17a(8), the third statutory provision subject to the exclusive jurisdiction of the bankruptcy court.

question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. *Heiser v. Woodruff,* 327 U.S. 726, 736 [66 S.Ct. 853, 857, 90 L.Ed. 970] (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy § 17.16[6], p. 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am.Bankr.L.J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law and Practice § 253 (1978).

*Brown,* 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10.

Lower courts have split over their interpretation of this footnote. Some courts, such as the Sixth Circuit in its *Spilman* decision, have concluded:

applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in a state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

*Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981).

Other courts, notably the Ninth Circuit, have concluded that the exclusive jurisdictional grant to bankruptcy courts erected a barrier to the application of collateral estoppel. The Ninth Circuit first articulated its analysis in *In re Houtman,* 568 F.2d 651 (9th Cir.1978), a pre-*Brown* case. The court stated:

The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act.[2] ...

[2] We acknowledge that a grant of exclusive jurisdiction to federal courts does not automatically preclude the application of the doctrine of collateral estoppel. [cites omitted]. However, we believe that collateral estoppel is inappropriate when 'a new determination is warranted ... by factors relating to the allocation of jurisdiction between [the two courts].' [cites omitted].

*In re Houtman* at 653. The Ninth Circuit has adhered to the *Houtman* analysis even after Brown. See *In re Rahm,* 641 F.2d 755, 757 (9th Cir.1981), *cert. denied* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *Derish v. San Mateo–Burlingame Bd. of Realtors,* 724 F.2d 1347 (9th Cir. 1983); *In re Comer,* 723 F.2d 737 (9th Cir.1984); *In re Harck,* 70 B.R. 118 (9th Cir. BAP, 1987).

Until last month the Seventh Circuit had not addressed the issue. But in its decision in *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987) our circuit has aligned itself with the Sixth Circuit by adopting the *Spilman* approach and stating:

Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments.... Thus, if the requirements for applying collateral estoppel have been satisfied, then that doctrine should apply to bar relitigation of an issue determined by a state court.

*Id.* at 1295.

In addition to *Klingman,* this court is cognizant of a recent line of Supreme

Court cases in which the court has re-examined the interplay between a grant of federal jurisdiction and preclusion principles. The analysis has centered on 28 U.S.C. § 1738 which provides in part:

> The judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possession as they have by law or usage in the courts of such state.

In *In re Byard,* 47 B.R. 700 (Bankr.M.D. Tenn.1985), a comprehensive opinion analyzing these developments, Judge Lundin explained the current state of the law as follows:

> The principles of 'full faith and credit' under § 1738 have undergone intensive re-examination and clarification in several recent Supreme Court opinions. The rule as stated by the Supreme Court is that 'a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' *Migra v. Warren City School District Board of Education,* 465 U.S. 75, [81], 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also Marrese v. American Academy of Orthopaedic Surgeons,* [470] U.S. [373], 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch,* [466] U.S. [284], 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

> . . . .

> In *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), the Supreme Court indicated that only a clear Congressional intent to contravene § 1738 will permit a federal court to deny the preclusive effect of a state court judgment.

> . . . . .

> For purposes of *claim* preclusion only, in *Brown v. Felsen,* 442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979) the Supreme Court found sufficient congressional intent to deny *res judicata* effect to state court judgments in dis-

chargeability litigation. This conclusion is acknowledged if not restated by the Supreme Court in *Marrese. See* U.S. at [386], 105 S.Ct. at 1334. The Supreme Court in *Brown* reserved, however, the question whether *issue* preclusion remained possible in dischargeability litigation.

*Id.* at 701–02. *See also, In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985) (adopting the *Byard* analysis).

As *Byard* further acknowledges, the rules of application of section 1738 seem to have been ignored by most bankruptcy courts. "Instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice." *Byard,* 47 B.R. at 703, citing Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment),* 58 Am. Bankr.L.J. 349 (Fall 1984).

A recent Supreme Court case addressing the application of section 1738 is *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). *Marrese* dictates that federal courts must determine a preclusive effect of a state court judgment under a two-part test. First, it is necessary to examine state preclusion law in determining the preclusive effect of a state court judgment. "Only if state law indicates that a particular claim or issue would be barred" is it necessary to move to the second part of the test—whether an exception to section 1738 should apply. *Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335.

To determine the application of collateral estoppel to this case we must first determine what preclusive effect, if any, Wisconsin courts would give to the Grant County judgment. Then, if Wisconsin would grant preclusive effect to the judgment, we must see whether any exemption to section 1738 applies.

Under Wisconsin law four basic requirements must be satisfied before collateral estoppel can be applied:

1. The prior judgment must be valid and final on its merits;

2. There must be identity of issues;

3. There must be identity or privity of parties;[3]

4. The issues in the prior action asked to be invoked must have been actually litigated and necessarily determined.

*See Ryan, Collateral Estoppel in the Wisconsin Courts*, 55 Wisconsin Bar Bulletin 31 (Jan. 1982). *See also Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986). The sole element disputed in the present case is whether there is an identity of issues. That element is identical under Wisconsin or federal law, and the result in this case is also identical under either standard.

In order to satisfy the identity of issues requirement the paramount considerations and the burdens of proof must be the same in both proceedings. In *State ex rel. Flowers v. H & SS Department*, 81 Wis.2d 376, 260 N.W.2d 727 (1978) the Supreme Court of Wisconsin explained that "[t]he second proceeding must involve ... the same bundle of legal principles that contributed to the rendering of the first judgment." *Flowers*, 81 Wis.2d at 387, 260 N.W.2d 727, *citing C.I.R. v. Sunnen*, 333 U.S. 591, 602, 68 S.Ct. 715, 721, 92 L.Ed. 898 (1948).

Neither party has seriously disputed that the paramount considerations in both proceedings are the same. Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Under section 523(a)(6), an injury may be malicious "if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury." 3 *Collier on Bankruptcy* ¶ 523.16[1] (15th ed.

1983) (footnote omitted). The general rule is that "liabilities arising from assault and battery are generally considered as founded upon a willful and malicious injury and therefore within the exception." *Id. See also, In re Pitner*, 696 F.2d 447 (6th Cir. 1982).

In addition, in the Grant County action the jury was instructed pursuant to Wis. JI–civil–2005 (Adapted) which provides in relevant part:

A battery is the unlawful and intentional use of force and violence upon the person of another, resulting in the infliction of physical harm to such other. The use of force or violence in any degree upon the person of another is unlawful when no permission for the bodily contact has been given by the person upon whom such force or violence has been committed.

An essential element of a battery is that the use of force or violence upon the person of another must have been intentional, that is, consciously directed at the person of such other by the one charged with the commission of a battery. One who through carelessness or negligence inflicts physical harm upon another without an intent to invade the person of another or to cause bodily contact with such other is not guilty of battery.

The necessary elements of a battery, all of which must be found to have existed before you may find that a battery has been committed, are these:

(1) An unlawful use of force or violence upon another.

(2) The intentional direction of such force or violence at the person of another.

(3) The sustaining of bodily harm by the person against whom such force or violence is directed.

As the jury instructions standards indicate, the paramount considerations in the Grant County action and a dischargeability determination pursuant to section 523(a)(6) are virtually identical.

---

**3.** This requirement is discarded under the federal test for collateral estoppel. *See Klingman.* It has also undergone serious, if not total, erosion in Wisconsin. In any event, the requirement is unquestionably met in this case.

The defendant has questioned whether the state court burden of proof is the same as the burden of proof in a dischargeability proceeding. The jury in the state court action was held to a standard of "clear and convincing evidence" in reaching its determination of battery, which is the same burden as is applied under 11 U.S.C. § 523(a)(6).[4] However, the damages were determined using a lesser standard.[5] Damages are a necessary element of liability in a tort claim.[6] That difference in the burden of proof does not destroy the identity of issues in this case. Under section 523(a)(6) the nature of the act gives rise to nondischargeability, not the amount of damages resulting from the act.

In *Coen v. Zick*, 458 F.2d 326 (9th Cir. 1972), the Ninth Circuit addressed the question of the scope of dischargeability pursuant to the predecessor to section 523(a)(6).[7] The court concluded that the exception to discharge hinges upon the nature of the *act* which gave rise to the liability rather than upon the nature of the *liability*. In *In re Adams*, 761 F.2d 1422 (1985) the Ninth Circuit explained the *Coen* holding as follows:

> The statutory exception which measures nondischargeability is '... for liabilities ... willful or malicious injuries to the person or property of another....' The exception is measured by the nature of the act, *i.e.*, whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.* One liability is limited to actual compensation.... But for this type of conduct, yet another liability may be incurred if the jury under prior instructions sees fit to award it. That is for punitive damages. Both types of lia-

bility are within the statute as 'liabilities' for 'willful or malicious injuries to the person or property of another.'

*Id.* at 329–30 (emphasis added).

There is no evidence in the legislative history underlying either section 523(a)(6) or section 523(a)(9) that suggests that Congress intended to limit the scope of nondischargeability to punitive damages. We therefore see no reason to depart from the rule articulated in *Coen*.

*In re Adams*, at 1427–28.

The jury found that Wagner, by committing a battery, inflicted a willful and malicious injury upon Conrad. Because the nature of Wagner's act was determined using a standard of proof that comports with the clear and convincing standard required for dischargeability proceedings, there is an identity of issues between the first and second proceedings.

The second step of the *Marrese* analysis would require this court to determine whether an implied or express repealer to section 1738 existed. In *Marrese*, the court stated that "[r]esolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress." *Marrese*, 470 U.S. at 386, 105 S.Ct. at 1335. The Supreme Court has acknowledged the implied repealer in *Brown*, but only as far as claim preclusion or *res judicata*. The trend has been for the Supreme Court to take a restrictive and narrow view of the implied or express repealer to section 1738.[8] The Seventh Circuit apparently adopted that narrow view in making its ruling in *Klingman* without

---

**4.** *See Trewyn*, 12 B.R. at 546.

**5.** The burden of proof on Question 4, regarding punitive damages, was "to satisfy or convince ... to a reasonable certainty by evidence which is clear, satisfactory and convincing that punitive damages should be awarded." Record at 1864–1865. Thus, it appears a clear and convincing standard was used on this damages question.

**6.** *See Schicker v. Leick*, 40 Wis.2d 295, 299, 162 N.W.2d 66 (1968) and *Associates Financial Services Co. v. Hornik*, 114 Wis.2d 163, 167, 336 N.W.2d 395 (1983).

**7.** Section 17 (11 U.S.C. § 35).

**8.** See *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

comment or finding regarding implied repealer.

At least one commentator who has exhaustively reviewed collateral estoppel in a dischargeability proceeding pursuant to sections 523(a)(2), (4), and (6) has suggested a balancing of policy considerations between preclusion and exclusive federal jurisdiction.[9] *See Ferriell* at 68–69. The policy considerations behind collateral estoppel are judicial economy, promoting reliance on judicial decisions, finality, and strengthening comity interests between federal and state courts. These interests have been affirmed by the Seventh Circuit in *Klingman. See* at 1018. The policy in favor of exclusive federal jurisdiction is founded on the desire for uniformity and certainty of decisions by experienced courts.

"[W]here the policies behind preclusion are furthered by reliance on the existing judgment, and where the policies supporting exclusive jurisdiction have no application, relitigation should not be permitted." *Ferriell* at 69. In this case federal policies favoring exclusive federal jurisdiction would not be curtailed if collateral estoppel were to be applied. This is not a case where the state court has no experience dealing with the issues involved. State courts regularly deal with battery and wrongful death suits. The case was vigorously litigated for eleven days on legal standards that are essentially identical to those of the federal courts. The risk of inconsistent lines of precedent or idiosyncratic results is nil.

Furthermore, the bankruptcy petition in this case was filed, not by Wagner, but by his creditors. This raises an unique concern in that:

Involuntary petitions are frequently filed to prevent the debtor from dissipating its assets or to enable the petitioning creditor to equalize their position vis-a-vis other creditors. Viewed in this light, the renewed hostilities, although initiated by the creditor, are merely a legitimate step in a collection process following judgment. It would be unfair to prevent a creditor from asserting the effect of a previously obtained judgment in a bankruptcy proceeding initiated, in part, to effectuate that judgment.

*Ferriell* at 72, n. 308.

The requirements for the application of collateral estoppel to the present case have been met. The issue of the willfulness and malice of the injury to Conrad was thoroughly litigated. The verdict, based on jury instructions which are essentially identical to the standards required in section 523(a)(6), found that a battery had been committed. There is no doubt that Wagner's actions on February 12, 1983, constituted a willful and malicious injury to Conrad. Thus, Wagner is barred from relitigating that issue in this forum.

Summary judgment is available only when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56, (Bankruptcy Rule 7056). The moving party has the burden of establishing the lack of a genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984) *citing Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). *See also In re LaCasse,* 28 B.R. 214 (Bankr.D.Minn. 1983). All inferences drawn from underlying affidavits and exhibits must be viewed in the light most favorable to the party opposing the motion. If the moving party

**9.** This is the final step in an elaborate test propounded by *Ferriell.* In the first step, the bankruptcy court would look at the preclusive effect of the judgment under the law of the state that rendered the judgment. If it had preclusive effect, the second step would be to apply federally developed principles of issue preclusion. *Ferriell* states that:

Such an approach would not conflict with the full faith and credit statute since the grant of

exclusive jurisdiction in section 524(c) can be interpreted as a limited exception to the legislative full faith and credit requirement. By honoring state rules of preclusion, as long as they do not exceed federal principles, the exception is limited in the narrowest possible scope.

*Ferriell* at 69 (footnotes omitted). The approach is interesting, but for our purposes only the policy balancing is relevant.

fails to meet its burden, the motion must be denied. *Id.* Applying this standard to the present record, the plaintiffs' have met their burden of establishing the absence of any genuine issue of material fact. There-

fore, plaintiffs' motion for summary judgment is granted.[10]

---

**10.** In their motion for summary judgment the plaintiffs requested attorneys' fees pursuant to Bankruptcy Rule 9011 (Rule 11 of the Federal Rules of Civil Procedure). The parties did not brief this issue.

Rule 11 contains two grounds for sanctions: the "frivolousness clause" and the improper purpose clause." *See Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1435 (7th Cir.1987). The standard for imposing sanctions under Rule 11 requires an objective determination of whether conduct was reasonable under the circumstances. *Id.* at 1434. Applying this standard to Wagner's conduct it is clear that the standard has not been met. The purpose of Rule 11 is "to impose costs on the careless or reckless lawyer." *Id.* at 1437. The actions of Wagner were within the bounds of reasonable conduct. This court had two prior decisions indicating collateral estoppel was inappropriate in a dischargeability proceeding. Clearly, Wagner's opposition to the summary judgment was reasonable under the circumstance. Therefore, the prayer for relief must be denied.