**In re Jack L. & Ruth A. FIRSDON, Debtors.**

**Ralph STINEHART, Plaintiff,**

**v.**

**MID–AMERICAN BANK & TRUST CO., et al., Defendants.**

**Bankruptcy No. 85–0325.
Related Case 82–00479.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 21, 1987.

Max E. Rayle, Bowling Green, Ohio, for plaintiff.

Michael D. Reed, Sr., Toledo, Ohio, for Jack Firsdon.

Jerry W. Lee, Bowling Green, Ohio, for Mid-American and Joseph Vedra.

John J. Hunter, Toledo, Ohio, for Luckey Farmers, Inc.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Summary Judgment filed by the Plaintiff in the above entitled adversary action. The parties have filed their arguments relative to the merits of this Motion and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments, the evidence, and the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion For Summary Judgment should be granted in part and denied in part.

## FACTS

The facts in this case, to the extent they have been developed, do not appear to be in serious dispute. The Debtor in the underlying bankruptcy proceeding filed his voluntary Chapter 11 Petition with this Court on March 12, 1982. On March 19, 1984, this Court entered an Order confirming the

Debtor's Plan of Reorganization. During the pendency of the Debtor's post-confirmation reorganization efforts, it appears that the Debtor entered into an oral contract with the Plaintiff, whereby the Debtor would farm approximately 322 acres of land owned by the Plaintiff. Under the agreement, 115 acres would be planted with corn. The remaining acreage would be planted with soybeans. In return for the right to work this land, the parties agreed that the Plaintiff would be entitled to either one-half of each crop grown on this land or one-half of the proceeds therefrom.

Pursuant to this agreement, the Debtor grew the required amounts of each grain. However, the record is unclear as to the chain of possession which occurred after the grains were harvested. It appears that all of the corn was taken to the Debtor's storage facilities. It also appears that while the soybeans were initially taken to the Plaintiff's facilities, they were ultimately transferred to the Debtor's bins. The record further indicates that at the time these grains were taken to the respective facilities, they were co-mingled with other grain being held by each of the parties. In addition, the record indicates that at the time the grains were harvested, no measurement was made to determine the amounts yielded from the Plaintiff's property. Although the Debtor provided the Plaintiff with an estimate of the amounts of grain he was holding for the Plaintiff, it does not appear that a precise measurement was ever accomplished.

At some time in November of 1984, the Debtor applied for financing with the Defendants, Mid-American National Bank & Trust Co. (hereinafter Mid-Am), and Luckey Farmers, Inc. (hereinafter Luckey). It appears that this application was intended to provide for the Debtor's 1985 operations. As a part of the application process, Mid-Am made an estimate of the amounts of grain being held in the Debtor's facilities. This estimate included all grains being held by the Debtor, including those belonging to the Plaintiff. Although the record is unclear, it appears that Mid-Am was, at the time the estimate was made, apprised of the fact that some of the grain in the Debtor's facility was owned by the Plaintiff. It should be noted that the record appears to reflect that the Debtor had obtained financing from both Defendants in the past, and that he was currently indebted to those Defendants for that prior financing.

In December of 1984, the Debtor, as a part of the apparent financing arrangement which had been reached with the other Defendants, caused the grain in his bins to be transported to Luckey for sale on the open market. The record is unclear as to the identity of those persons who participated in the transportation of this grain. However, it appears that the participants included the Debtor, several of his relatives, and employees from Luckey. The record reflects that this grain was sold on the market and that the proceeds of sale were ultimately divided between both Mid-Am and Luckey. It further appears that these proceeds were applied to the Debtor's prior indebtedness with each of the respective Defendants. Although it appears that this sale of grain included the amounts being held by the Debtor on behalf of the Plaintiff, it is unclear whether or not the Debtor retained any grain subsequent to the transfer to Luckey.

At some time during the aforementioned transactions, the Plaintiff, unbeknownst to the Debtor, entered into a contract with another grain contractor for the sale of the Plaintiff's share of grain. This contract included the grain which was being held by the Debtor for the Plaintiff. After learning of the Debtor's transfer to Luckey, the Plaintiff was required to abrogate his contract with the other contractor through the payment of liquidated damages. The record indicates that the Plaintiff neither consented to the Debtor's transfer to Luckey nor received any of the proceeds therefrom.

In an effort to recover the value of his grain, the Plaintiff initiated an action in the Wood County Court of Common Pleas

against the Debtor, Mid-Am, and Luckey. In this action, the Plaintiff alleged that the Debtor's unauthorized transfer of grain to Luckey constituted a conversion of the Plaintiff's property. He also alleged that Mid-Am's and Luckey's participation in the disposition of grain subjects them to conversion liability. However, on October 1, 1985, the Debtor converted his Chapter 11 case to a proceeding under Chapter 7. Shortly thereafter, the Debtor removed the Plaintiff's State Court action to this Court. It should be noted that the notice to creditors mailed subsequent to the Debtor's conversion established December 30, 1985, as the last day on which to file complaints to determine dischargeability or to object to the Debtor's discharge. It should also be noted that the Plaintiff has filed a post-conversion claim in the Debtor's case for the amount of Twenty-five Thousand Six Hundred Twenty-one and 98/100 Dollars ($25,-621.98). As reflected on the record, the Plaintiff asserts that this claim is entitled to priority.

In response to the filing of the adversary action, the Debtor filed Cross-Claims (captioned as a Third-Party Complaint), against Mid-Am and Luckey for: 1) contribution in the Plaintiff's conversion action, 2) equitable subordination, and 3) lien avoidance. On January 31, 1986, Luckey filed a Cross-Claim against the Debtor seeking both a denial of the Debtor's discharge and a determination of dischargeability as to its debt. Mid-Am filed a Cross-Claim (captioned as a Counterclaim) against the Debtor, wherein it is alleged that the Debtor's action against Mid-Am is without any legal or factual basis.

The Motion presently before the Court seeks a summary adjudication in this adversary proceeding. In support of this Motion, the Plaintiff argues that there is sufficient deposition testimony, answers to interrogatories, and uncontested exhibits to establish all required elements of an action for conversion. The Debtor opposes the Motion, arguing that there are numerous matters of fact which remain in dispute. It is argued that the existence of these disputes precludes the availability of summary judgment.

## LAW

The provisions of Federal Rule of Civil Procedure 56, as made applicable by Bankruptcy Rule 7056, state in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Under this rule, the Court may grant summary judgment in an action if the record establishes that there are no questions of material fact and that a party is entitled to judgment as a matter of law. *Hartwig Poultry, Inc. v. C.W. Service (In re Hartwig Poultry, Inc.)*, 57 B.R. 236 (Bkcy.N.D. Ohio 1986).

The provisions of 11 U.S.C. § 101(4) state in pertinent part:

> (4) "claim" means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The provisions of 11 U.S.C. § 348(a) state in pertinent part:

> (a) Conversion of a case from a case under one chapter of this title ... to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

Under these provisions, the conversion of a case from a Chapter 11 to Chapter 7 constitutes an order for relief as of the date of conversion. Any claims which arose during the pendency of the Chapter 11 proceeding become claims against the Chapter 7 estate. *5 Collier on Bankruptcy* 15th

§ 1112.03(6). While such claims are not necessarily entitled to an administrative priority, *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984), *In re Crouthmel Potato Chip Co.*, 52 B.R. 960 (E.D.Pa.1985), they are claims which, nevertheless, must be asserted against the debtor's estate.

The provisions of 11 U.S.C. § 362(a) state in pertinent part:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ... or to recover a claim against the debtor that arose before the commencement of the case under this title ...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title ...

Under this provision, any entity with a claim which arose prior to the Order For Relief may not prosecute an action against the debtor to collect on the pre-relief claim. See, 2 *Collier on Bankruptcy* 15th § 362.-04(1).

I

■ In the present case, it is evident that the events which gave rise to the Plaintiff's Complaint occurred during the pendency of the Debtor's Chapter 11 case, but prior to the conversion of that case to a proceeding under Chapter 7. As an initial matter, it is likely that the continued prosecution of this case constitutes a violation of the automatic stay which was imposed with the Order of Relief entered at the time of the case's conversion. However, as a substantive matter, the Court notes that regardless of whether or not the Plaintiff's action against the Debtor is found to be meritorious, the Plaintiff will, as a result of the case, only have a claim against the Debtor for the value of the allegedly converted grain. That claim must be asserted against the Debtor's Chapter 7 estate and cannot be prosecuted as an action against the Debtor individually. *See*, 11 U.S.C. § 362(a). Therefore, completing litigation in this case will not have any legal or practical benefit for either the Plaintiff or the administration of the estate. While it is recognized that the issues raised in this action may again be raised in a hearing relative to the validity of the Plaintiff's claim, such matters are not properly nor presently before the Court. *See*, Bankruptcy Rule 3007. Since the Complaint in this case, as against the Debtor, only seeks a judgment for the conversion of property, and since the requested relief is not available to the Plaintiff outside of any distribution which might be made from the Debtor's estate, it must be concluded that the Plaintiff's cause of action against the Debtor fails to state a claim upon which the requested relief can be granted. Accordingly, it must also be concluded that this entitles the Debtor to judgment as a matter of law.

■ With regard to the actions in the Plaintiff's Complaint against Mid-Am and Luckey, it is evident that this dispute does not involve any party which is before the Court under the jurisdiction of Title 11. As a result of the fact that these actions have no continued nexus to the administration of the Debtor's case, they are no longer related proceedings within the contemplation of any statue which might otherwise confer jurisdiction to this Court. The question of whether or not Luckey or Mid-Am are liable for their participation in the Debtor's alleged conversion is a matter which addresses issues of state law and which may

be adequately litigated in State Court. Therefore, there is no necessity for this Court to stretch its specific grant of jurisdiction so as to serve as a forum for a simple dispute between creditors. *See, United States v. Farmers State Bank of Leed, North Dakota (In re Alexander),* 49 B.R. 733 (Bkcy.D.N.D.1985). Accordingly, this action should also be dismissed.

Turning to the causes of action set forth in the Debtor's Cross-Claim, it is evident that the first cause of action seeks indemnification from Luckey and Mid-Am in the event the Debtor is found liable to the Plaintiff for conversion. However, for the reasons previously stated, the Plaintiff is not entitled to prosecute the conversion allegations. Without that action, the potential for indemnifiable damages no longer exists. Since the dismissal of the Plaintiff's action against the Debtor will dissolve any indemnification liability which may have existed, the Debtor's first cause fails to state a claim upon which relief could be granted. Therefore, the absence of such a claim entitles Mid-Am and Luckey to judgment as a matter of law on the Debtor's first Cross-Claim.

The second and third causes set forth in the Debtor's Cross-Claim appear to allege that the claims of Luckey and Mid-Am should be subordinated to the claims of other creditors. With the exception of the allegation that these entities were insiders of the Debtor, the grounds for these allegations are substantially unclear. Since the provisions of 11 U.S.C. § 510 allow for the subordination of claims based upon the existence of certain equitable considerations, the Debtor must be afforded the opportunity to litigate any claims which might entitle him to the relief available under that section. However, because there is insufficient evidence presently before the Court which establishes, as matter of law, the Debtor's right to the requested relief, summary judgment cannot be granted at this point in the proceedings.

## III

The Court must next consider the Cross-Claim filed by Mid-Am against the Debtor. Although the precise nature of this action is unclear, it appears to be an action sounding in tort for misuse of process. While it is doubtful that such an action may be brought as a counterclaim to the action which is allegedly abusive, it is evident Mid-Am's cause is not presently supported by sufficient evidence so as to enable this Court to conclude that there are no questions of material fact relative to this Cross-Claim. Accordingly, it must be concluded that summary judgment is not yet available in this action.

## IV

Finally, the Court must consider the Cross-Claims filed by Luckey against the Debtor. In those actions, it is asserted that the Debtor's discharge should be denied, and that the debt owed to Luckey should not be found dischargeable. A review of the facts finds that the Order for Relief in the Debtor's Chapter 7 case was entered as of the conversion on October 1, 1985. As was previously indicated, December 30, 1985, was established as the last day on which to file actions to deny a discharge and seek a determination as to the dischargeability of a debt. Luckey's Cross-Claim was filed on January 31, 1986.

While the events which gave rise to the assertions set forth in Luckey's Cross-Claim occurred in the same transaction as the Plaintiff's Complaint and the Debtor's Cross-Claim, it is well settled that the similarity in transactions does not exempt a creditor from the time requirements for filing complaints under either 11 U.S.C. § 523(a) or 727(a). Actions to oppose a debtor's discharge and to determine the dischargeability of a debt are not compulsory counterclaims which relate back to the filing of the original complaint. This results from the fact that the grounds upon which such complaints may be filed exist prior to the expiration of the time allotted for bringing these actions. Therefore, a creditor which becomes involved in an adversary proceeding with a debtor cannot file a counterclaim or cross-claim against the debtor to object to the discharge or to

determine the dischargeability of a debt if the time for filing such actions has already expired. *See, Crabtree v. Haladye (In Re Crabtree),* 14 B.R. 601 (Bkcy.N.D.Ohio 1981). Since, in the present case, Luckey's Cross-Claim is of the type which has been precluded by the passing of the time periods set forth in the applicable Bankruptcy Rules, *see,* Bankruptcy Rules 4004, and 4007, it must be concluded that these Cross-Claims are precluded by the statute of limitations. Accordingly, the Debtor is entitled to judgment as a matter of law.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion For Summary Judgment be GRANTED in part and DENIED in part.

It is FURTHER ORDERED that the Complaint filed by the Plaintiff be, and is hereby, DISMISSED.

It is FURTHER ORDERED that the Debtor's First Cross-Claim be, and is hereby, DISMISSED.

It is FURTHER ORDERED that the Cross-Claims filed by Luckey Farmers, Inc., be, and are hereby, DISMISSED.