**In re James Louis SERMERSHEIM, Debtor.**

**James Louis SERMERSHEIM, Plaintiff,**

v.

**Cherie Lynn SERMERSHEIM, and Donald F. Kelch, Defendants.**

**Bankruptcy No. 1–87–02738.
Adv. No. 88–0119.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 6, 1989.

Robert S. Davidson, Marion, Ohio, for debtor.

Donald F. Kelch, Columbus, Ohio, pro se.

Donald F. Kelch, Columbus, Ohio, for defendant.

## OPINION AND ORDER AWARDING DEBTOR DAMAGES AND DETERMINING DEBT TO BE NONDISCHARGEABLE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the court upon plaintiff's complaint for contempt and the parties' stipulation and briefs in support of their positions. Upon consideration thereof, the court finds that Debtor should recover $1,015.00 from defendants and that the debt in issue should be excepted from discharge.

### FACTS

On October 13, 1987, plaintiff/Debtor and defendant Cherie Lynn Sermersheim (hereinafter defendant Cherie) were granted a dissolution of marriage. Plaintiff's Pretrial Brief at 1 (September 19, 1988); Defendants' Pretrial Brief at 1 (October 7, 1988). In executing the separation agreement, Debtor agreed to pay defendant Cherie alimony in the amount of $175.00 per month for twelve months, commencing

September 15, 1987, and to hold defendant Cherie harmless on all credit card charges incurred prior to August 1, 1987. Defendant's Pretrial Brief, Exhibit A at 2–3 (September 19, 1988) (hereinafter Separation Agreement). On November 27, 1987, Debtor filed his petition under chapter 7 of title 11 and listed defendant Cherie as a creditor having an unsecured claim without priority in an unknown, unliquidated amount. *See* Debtor's Petition, Schedule A–3 (November 27, 1987).

On February 1, 1988, a motion for contempt was filed by Cherie's attorney, defendant Donald F. Kelch (hereinafter defendant Donald) on behalf of defendant Cherie in the Court of Common Pleas of Franklin County, Ohio, Division of Domestic Relations, as a result of Debtor's failure to make the payments pursuant to the separation agreement. Plaintiff's Pretrial Brief at 2; Defendants' Pretrial Brief at 2. A hearing was held on said motion in the domestic relations court on March 11, 1988. *See* Transcript of Proceedings on March 11, 1988, *Sermersheim v. Sermersheim*, Case No. 87DM–09–1778 (November 22, 1988) (hereinafter March 11, 1988 Transcript). At that time, the Honorable George W. Twyford continued the hearing until March 22, 1988. *Id.* at 16–18. Debtor was granted a discharge by this court on March 16, 1988. *See* Plaintiff's Pretrial Brief at 2.

Debtor, on April 7, 1988, filed the instant complaint requesting an order finding defendants in contempt of this court. The parties subsequently stipulated that:

1) Although, neither a formal Complaint to Determine Dischargeability nor a Complaint to Revoke the Discharge of the subject debts have been filed in this action, the issue of the dischargeability of the subject debts is properly before the court, the issue of dischargeability has been briefed by counsel for each party, and the court has jurisdiction to determine the issue of dischargeability.

2) The debts which are at issue consist of liabilities on credit cards issued solely in the name of Cherie Lynn Headley (Sermersheim) and the debtors, account numbers and amounts are set forth on the attached Exhibit A.

Stipulation (February 3, 1989).

At the continued hearing held on defendant Cherie's motion for contempt, Judge Twyford, upon consideration of the evidence adduced and the oral arguments of the parties, found that Debtor's assumption of the credit card obligations, pursuant to the separation agreement, was in the nature of alimony. Transcript of Proceedings on April 15, 1988 at 27–28, *Sermersheim v. Sermersheim*, Case No. 87DM–09–1778 (November 22, 1988) (hereinafter April 15, 1988 Transcript).

In the instant proceeding, Debtor "maintains that he should be granted an order compelling defendants to refrain from further attempts at collection of the" debts. Plaintiff's Pretrial Brief at 3. Debtor alleges that defendants had constructive notice of Debtor's petition, that it was incumbent on defendant Cherie to file a complaint to determine dischargeability, and that because no complaint was filed, defendant Cherie is now barred from seeking redress through the domestic relations court. *Id.* Debtor also contends that application of the *Calhoun* test results in the discharge of the debts in issue. Plaintiff's Pretrial Brief at 6.

Defendants assert that no official notification of Debtor's petition was received, that their motion for contempt filed with the domestic relations court was filed in good faith, and that the hearing before Judge Twyford was a full evidentiary hearing, adjudicating the debts in issue. *See* Answer (May 13, 1988); Defendants' Pretrial Brief at 3. Defendants also maintain that application of the *Calhoun* test does not result in the discharge of the debts in issue. Defendants' Pretrial Brief at 7. Defendants lastly request that this court affirm Judge Twyford's finding that the debts in issue constitute nondischargeable alimony, pursuant to 11 U.S.C. § 523(a)(5). *Id.* at 8.1.

### DISCUSSION

The relief requested by Debtor includes reimbursement for all damages, costs and

expenses incurred by him as a result of defendants' "contumacious conduct." Complaint at 2 (April 7, 1988). Defendants assert, however, that they were never officially notified of Debtor's bankruptcy petition. Answer at 1 (May 13, 1988). Although Debtor listed defendant Cherie in his petition, the address differs from that given the domestic relations court by defendant Cherie. *See* March 11, 1988 Transcript at 9.

Telephonic notification of the filing of a Debtor's petition is sufficient notification of the automatic stay attendant such a filing. *See In re Carter*, 691 F.2d 390, 9 B.C.D. 1086 (8th Cir.1982); *In re Johnson*, 18 B.R. 755 (Bkrtcy S.D. Ohio 1982). *See also Matter of Davis*, 74 B.R. 406, 16 B.C. D. 40 (Bkrtcy. N.D. Ohio 1987) (oral notice to a creditor is sufficient notice of a bankruptcy filing) (citation omitted); *Matter of Brock*, 58 B.R. 797, 14 B.C.D. 161 (Bkrtcy. S.D.Ohio 1986) (Debtor's former spouse testified that she had a conversation with Debtor's attorney in which he told her that it was his legal opinion that she could not proceed in the state court with a contempt action in view of the bankruptcy filing; Debtor's former spouse was both aware that the bankruptcy proceeding had been filed and that she was listed as a creditor).

Pursuant to the uncontested affidavit of Robert S. Davidson, attorney for Debtor, defendant Cherie was telephonically informed, on January 22, 1988, that Debtor had filed bankruptcy and had listed her as a creditor. *See* Affidavit of Robert S. Davidson of November 15, 1988 at 2 (November 17, 1988). Mr. Davidson's affidavit also reflects telephonic notification to defendant Donald on February 25, 1988. *Id.* Furthermore, defendant Cherie states in her affidavit of February 11, 1988, filed with the domestic relations court, that Debtor alleged that he had filed bankruptcy. Plaintiff's Pretrial Brief, Exhibit B. Even if defendants did not receive written notification of Debtor's petition, they did receive oral notification of Debtor's petition. Despite this notification, defendants, as previously stated, on February 2, 1988

filed a motion for contempt in the domestic relations court.

Debtor contends that defendants violated the automatic stay by requesting the domestic relations court to hold Debtor in contempt for nonpayment of certain liabilities arising out of the divorce proceeding. Complaint at 1–2. In *Brock, supra*, Debtor's former wife filed a motion for contempt against Debtor in the domestic relations court. Debtor, thereafter, filed his petition under chapter 7. *Brock*, 58 B.R. at 798. The *Brock* court stated that:

[t]he automatic stay issued by the bankruptcy court which becomes effective upon the filing of a bankruptcy petition is integral to the entire statutory scheme of Title 11 and represents a considered congressional determination that a debtor, creditors and other interested parties in a bankruptcy proceeding must be guaranteed ... an immediate opportunity for a court appointed trustee to examine the assets and liabilities of a debtor free from any pressure brought by an individual creditor or interested party. It is the bankruptcy court *alone* that has the exclusive jurisdiction to determine questions involving the automatic stay.

*Id.* at 799–800. *See also In re Jones*, 38 B.R. 690 (N.D. Ohio 1983) (Judge John W. Potter affirmed the bankruptcy court's finding that Debtor's ex-spouse's contempt action in state court violated the injunction imposed by Debtor's discharge). Furthermore,

[t]he stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted.

*NLT Computer Services Corporation v. Capital Computer Systems, Inc.*, 755 F.2d 1253, 1258 (6th Cir.1985) (citation omitted). A creditor who has acted in violation of the automatic stay and who fails to return the status quo after receiving notification of a Debtor's petition and the automatic stay attendant thereto, is liable for damages resulting from his willful violation, including costs and attorney's fees, and in certain

situations, punitive damages. *In re Holman*, 92 B.R. 764 (Bkrtcy.S.D.Ohio 1988); *Brock*, 58 B.R. at 806 (since Debtor's former wife was listed and was directly advised that her actions in seeking a contempt order were in violation of the bankruptcy court's automatic stay, the court must conclude that her violation of the provisions of § 362(a) was willful); 11 U.S.C. § 362(h).

The court, as previously discussed, finds that defendants received notice of Debtor's petition. Yet, defendants pursued defendant Cherie's motion for contempt in the domestic relations court. Defendants did not seek relief from stay prior to initiation or subsequent prosecution of the motion, nor did defendant Cherie seek determination of the dischargeability of the debts in issue through the initiation of an adversary proceeding in this court. Defendants are, therefore, in violation of the automatic stay attendant to the filing of Debtor's petition. Debtor's complaint is, then, well taken and Debtor should recover damages, pursuant to 11 U.S.C. § 362(h) resulting from defendants' willful violation of stay.

Debtor states that he has incurred legal expenses in the instant proceeding in the amount of $500.00 and legal expenses in defending the motion for contempt in the domestic relations court in the amount of $515.00. Affidavit of James Louis Sermersheim of December 22, 1988 at 2 (January 17, 1989). Debtor may, then, recover $1,015.00 from defendants as a result of their willful violation of stay.

The last issue for resolution by the court concerns the parties' stipulation that this court determine the issue of dischargeability of the debts in issue. See Discussion *supra* p. 887 & Stipulation.

Defendant Cherie requests that this court affirm the domestic relations court's determination that the subject debts are not dischargeable pursuant to § 523(a)(5) and constitute alimony, maintenance and support. Defendants' Pretrial Brief at 8.1. Pursuant to the parties' stipulation, the subject debts represent liabilities on credit card charges totaling $8,929.16. Stipulation, Exhibit A (February 3, 1989). At the April 15, 1988 hearing held in the domestic relations court, Judge George W. Twyford found that the credit card obligations assumed by Debtor in accordance with the parties' separation agreement were in the nature of sustenance alimony. April 15, 1988 Transcript at 27. *See also* Proceeding Memo, Entry (June 1, 1988).

In *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987), the seventh circuit noted that:

... there is disagreement among the courts regarding the collateral estoppel effect accorded state court judgments in bankruptcy proceedings involving dischargeability. Some courts, because of the bankruptcy courts' exclusive jurisdiction in determining dischargeability, will give no collateral estoppel effect to state court determinations, while other courts do apply collateral estoppel when the issue was litigated previously by the parties. The majority of courts apply collateral estoppel to dischargeability determinations where the state litigation actually and necessarily decided the relevant issue. This result is, we believe, the appropriate one. As the Sixth Circuit noted in *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981), "that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts."

*Id.* at 1295 (citations omitted). *See also In re Wallace*, 840 F.2d 762, 764 (10th Cir. 1988) (although the bankruptcy court in a dischargeability action under § 523(a) ultimately determines whether or not a debt is dischargeable, we believe that the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability) (citation omitted); *In re Weitzel*, 72 B.R. 253 (Bkrtcy.N.D.Ohio 1987) (in *Spilman*, the court held that where all requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues); *Matter of Weber*, 81 B.R. 482, 483 (Bkrtcy.W.D.Wis.1986) (the Supreme Court has approved the use of collateral estoppel

to preclude relitigation of fact questions in dischargeability proceedings) (citation omitted); *Matter of Sankner*, 69 B.R. 312, 315 (Bkrtcy.M.D.Fla.1987) (when factual issues needed to determine the dischargeability of a debt are also necessary to the state court determination and all of the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues).

Collateral estoppel precludes relitigation of factual issues if:

(1) the issue to be precluded is the same as that involved in the prior state action,

(2) the issue was actually litigated by the parties in the prior action, and

(3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*Wallace*, 840 F.2d at 765 (citing *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984); *Goss v. Goss*, 722 F.2d 599 (10th Cir.1983); *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981)). *See also Klingman*, 831 F.2d at 1295 (additional element of collateral estoppel is that the party against whom estoppel is invoked must be fully represented in the prior action).

█ Although Judge George W. Twyford, upon consideration of the testimony taken at the hearing held on defendant Cherie's motion for contempt, found that the debts in issue were in the nature of sustenance alimony, this court is not precluded from determining whether the debts in issue are dischargeable. *See* Discussion *supra* p. 889. Collateral estoppel bars relitigation of the factual determinations by the domestic relations court. The relevant facts, however, are not in dispute.

The section under which defendant Cherie seeks to except the debts in issue from discharge provides that a discharge under chapter 7 does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made

in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

*   *   *   *   *   *

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

The Sixth Circuit in *Long v. Calhoun*, 715 F.2d 1103 (6th Cir.1983), set forth a three part test for determining the dischargeability of a debt incurred pursuant to a divorce decree. That is,

... the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of joint debts.

*   *   *   *   *   *

If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied.

*   *   *   *   *   *

Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support.

*Id.* at 1109–10.

Factors for the court's consideration in determining the parties' intent in creating this obligation include:

1.  whether there is an underlying obligation to pay alimony or support in the first instance;

2.  the amount of alimony or support a state court would have reasonably granted;

3. whether a provision is made for termination of the debtor's obligation upon remarriage of the former spouse ...; and

4. other factors which might assist the bankruptcy court in discerning either the underlying purpose of the state decree or the actual intentions of the parties.

*In re Skaggs,* 91 B.R. 1018, 1021 (Bkrtcy.S. D.Ohio 1988) (citing *Calhoun, supra*).

█ The provision of the separation agreement under which the parties seek determination of the dischargeability of the credit card obligations provides:

*Article VI—Debts and Obligations*

\*    \*    \*    \*    \*    \*

B. Husband shall assume and be responsible for the payment of ... all credit card charges incurred prior to August 10, 1987 and shall hold Wife harmless on the payment thereof.

Separation Agreement at 3. The court notes that the separation agreement contains articles titled "Division of Property" and "alimony". *Id.* at 2, 3. Article IV provides for a division of the parties' motor vehicles, household goods, rent deposit, expense money and personal property; Article VII provides for 12 monthly payments commencing September 15, 1987 in the amount of $175.00 to defendant Cherie from Debtor. Debtor testified at the April 15, 1988 hearing held in the domestic relations court that he initially intended to pay the credit card obligations. April 15, 1988 Transcript at 13, 16. Furthermore, because defendant Cherie indicates that her income is insufficient to pay her expenses, the court may presume that the clause in the separation agreement is intended for support where the circumstances indicate that the recipient spouse needs support. *In re Singer,* 787 F.2d 1033 (6th Cir.1986). *See* Affidavit of Cherie Lynn Headley of January 11, 1989 (January 12, 1989). It appears, then, that the parties intended Debtor's assumption of the credit card charges to provide support to defendant Cherie.

█ Next, the court finds that Debtor's assumption of the credit card charges had the effect of providing support necessary to ensure that defendant Cherie's needs were satisfied. Defendant Cherie states that she has insufficient income to meet her expenses and is financially assisted by her family and friends in meeting her expenses. Affidavit of Cherie Lynn Headley of January 11, 1989 at 2 (January 12, 1989). Furthermore, defendant Cherie has not been employed on a regular basis since January 1, 1989. *Id.* Her total income for 1988 was $8,000. *Id.* Debtor states that his weekly take home pay is $303.57 and that his monthly expenses total $1,021.67. Affidavit of James Louis Sermersheim of December 22, 1988 at 1 (January 17, 1989). Debtor also states that he has an additional unfixed rental obligation and a $301.96 outstanding obligation to his former employer. *Id.* at 2. Nevertheless, it appears that Debtor's budget permits him to use approximately $190 per month to make payments on these obligations ($303.57 times four weeks per month minus $1,021.67). Because Debtor's income exceeds his liabilities and because defendant Cherie's income does not exceed her liabilities, Debtor's assumption of the debts in issue has the effect of providing support.

█ Lastly, the court finds, as calculated above, that Debtor has the ability to pay the outstanding credit card charges and that the debts in issue totaling $8,929.16 should be excepted from discharge. *See* Stipulation, Exhibit A.

The reasonableness of the debtor's continuing obligation, however, may be determined only by weighing his obligations under the divorce decree against the fresh start granted to him under the bankruptcy laws.

*In re Caughenbaugh,* 92 B.R. 255, 257–8 (Bkrtcy.S.D.Ohio 1988). Because these debts represent credit card charges, no doubt, interest is accruing on these outstanding obligations. Therefore, to hold Debtor responsible for the accruing interest on these obligations would be "manifestly unreasonable under traditional concepts of support." *Calhoun,* 715 F.2d at 1110. Furthermore, defendant Cherie is 26 years old, has a degree in home economics

from Indiana State University, has no dependents and is employable. *See* April 15, 1988 Transcript at 22. The remaining interest obligation on these outstanding credit card charges should be discharged as the court finds that it is not in the nature of support. *See Caughenbaugh,* 92 B.R. at 258. Thus, while Debtor may not discharge the debts in issue and must arrange payment of the $8,929.16, he is not responsible for the interest accruing on these obligations and may discharge same. In light of the foregoing, it is therefore

ORDERED that Debtor/plaintiff's complaint is well taken and that Debtor be, and he hereby is, granted judgment in the amount of $1,015.00 against the defendants Cherie Lynn Sermersheim and Donald F. Kelch. It is further

ORDERED that Debtor's debt to defendant Cherie Lynn Sermersheim in the amount of $8,929.16 be, and it hereby is, excepted from discharge.