In re Troy SMITH, Linda Smith, Debtors.

Troy SMITH, et al., Plaintiffs,

v.

GTE NORTH INCORPORATED, Defendant.

Bankruptcy No. 92–31489.
Adv. No. 93–3177.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

June 9, 1994.

Gordon Barry, Toledo, OH, for plaintiffs.

Bruce Kazee, Marion, OH, for defendant.

## OPINION AND ORDER GRANTING DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Troy and Linda Smith's (the "Smiths") adversary complaint against GTE North Incorporated ("GTE") seeking damages for GTE's alleged willful violation of the automatic stay pursuant to 11 U.S.C. § 362. The Court finds that the Smiths' complaint is well taken and that the Smiths should be granted judgment against GTE in the amount of $1,561.15 for actual damages. Additionally, the Court finds that GTE should turnover to the Smiths the $109.28 which GTE received as a result of its efforts to collect a preconversion debt. The Court further finds that the Smiths should be granted punitive damages against GTE in the amount of $1,000.00.

### FACTS

The Smiths filed a petition under chapter 13 on April 15, 1992. The Smiths' bankruptcy case was converted from a case under chapter 13 to a case under chapter 7 on April 6, 1993 (the "Conversion Date").

GTE disconnected the Smiths' telephone service on two separate occasions subsequent to the Conversion Date based on the Smith's nonpayment of a debt incurred prior to the Conversion Date.

Initially, GTE disconnected the Smiths' telephone service on April 27, 1993 based on the Smiths' nonpayment of a debt incurred prior to the Conversion Date (the "First Disconnection"). GTE refused to restore the Smiths' telephone service during the period from the date of the First Disconnection through May 25, 1993.

Although the Smiths' telephone service was restored by GTE on May 25, 1993, the Smiths were not informed of this fact.

GTE again disconnected the Smiths' telephone service on June 8, 1993 based on the Smiths' nonpayment of the same preconversion debt (the "Second Disconnection"). GTE refused to provide the Smiths with telephone service during the period from the date of the Second Disconnection through July 19, 1993.

GTE also received a payment from the Smiths subsequent to the Conversion Date on April 20, 1993 in response to GTE's collection efforts. GTE Billing Supervisor Roslyn Coffmon testified that $109.28 of this payment represented a payment for the balance due on the Conversion Date (the "Payment"). To date, GTE has not refunded the Payment to the Smiths or credited the Payment to the Smiths' account.

At trial, GTE conceded that it violated the automatic stay. Nonetheless, GTE argued that this violation was not willful.

Pam Teubner ("Teubner") testified that she has been a service representative with GTE for 22 years.

Teubner testified that she received bankruptcy court notices for GTE from 1988 through 1993 for "active" accounts. Teubner also received training in reviewing chapter 13 and chapter 7 notices which GTE received from bankruptcy court. Additionally, Teubner testified that GTE provided her with training as to the procedures to be followed when a debtor has converted a chapter 13 bankruptcy case to chapter 7.

Teubner testified that GTE received notice of the Smiths' chapter 13 bankruptcy in 1992.

Teubner testified that GTE was contacted telephonically by debtor Linda Smith ("Linda") on May 17, 1993. Upon GTE's request, Linda called GTE again on May 19, 1993 in order to provide GTE with the name of the Smiths' attorney, the bankruptcy case number, and the filing date of the Smiths' bankruptcy. Teubner testified that Linda in-

formed GTE that the Smiths had filed a bankruptcy case. According to Teubner, she assumed that Linda meant that the Smiths had filed a "new" bankruptcy case.

Subsequent to her conversation with Linda but prior to the Second Disconnection, Teubner learned that the Smiths had not recently filed a bankruptcy petition but rather that the Smiths' chapter 13 bankruptcy case had been converted to a case under chapter 7.

Teubner further testified that she spoke with the Smiths' counsel Gordon Barry ("Barry") on May 26, 1993. According to Teubner, Barry informed her that he viewed GTE's actions in disconnecting the Smiths' telephone service for nonpayment of a debt incurred prior to the Conversion Date as improper. As noted in GTE's pretrial brief, Barry informed GTE's in-house counsel that actions by GTE to disconnect the Smiths' telephone service for nonpayment of a pre-conversion debt were precluded by the bankruptcy code in light of 11 U.S.C. § 348. *See* Pretrial Brief of Defendant GTE North Incorporated, p. 2.

Teubner testified that she was informed by GTE's legal department that GTE could pursue collection of a debt owed to GTE by the Smiths which was incurred during the pendency of the Smiths' chapter 13 case but prior to the Conversion Date. Then, pursuant to such legal advice, Teubner testified that GTE made the Second Disconnection on June 4, 1993.

The Smiths testified at trial as to the damages allegedly flowing from GTE's violation of the automatic stay.

Linda testified that she was required to take time off from work in order to deliver certain documents to GTE regarding the Smiths' bankruptcy case. In addition, Linda testified that she was required to travel to her neighbors' house and to her mother's house in order to use the telephone during the period which GTE had disconnected the Smiths' telephone. Linda testified that her mother lives four to five blocks from the Smiths.

Linda also testified that she was required to take time off from work in order to attend a deposition and the trial in this matter.

Troy Smith ("Troy") testified that he was required to take time off from work in order to attend a deposition, a pretrial conference and the trial in this matter. Troy further testified that his efforts in administering a youth baseball league in which he was secretary and treasurer were hampered by GTE's disconnection of the Smiths' telephone service.

To summarize, the Smiths seek the following actual damages from GTE:

| 1. | Repayment of the preconversion debt which was collected by GTE from the Smiths | $109.28 |
|----|-------------------------------------------------------------------------------|---------|
| 2. | Lost wages for Linda | 45.00 |
| 3. | Lost wages for Troy | 184.80 |
| 4. | Fees for court reporter for depositions | $ 96.35 |
| | Total Actual Damages Claimed | $435.43 |

The Smiths further seek attorneys' fees and punitive damages pursuant to § 362(h).

## DISCUSSION

### WHETHER GTE WILLFULLY VIOLATED THE AUTOMATIC STAY

***Applicable Statutory Provisions:***

11 U.S.C. § 348(d) provides that:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section ... 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 362(a) provides that

[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

... (6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(h) provides that:

[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages.

### Burden of Proof

■ The Smiths bear the burden of proof by the preponderance of the evidence. *See In re Sielaff,* 164 B.R. 560 (Bankr.W.D.Mich. 1994) (applying preponderance standard); *c.f. Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (stating that the Supreme Court "presume[s] that [the preponderance of the evidence] standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake'") (citations omitted).

At the outset, the Court seeks to reemphasize the fact that:

[t]he stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted.

*Sermersheim v. Sermersheim (In re Sermersheim),* 97 B.R. 885, 889 (Bankr.N.D.Ohio 1989) (quoting *NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253, 1258 (6th Cir.1985) (citation omitted)). Section 362 operates to protect both the debtor and creditors of the estate who may be harmed by a creditor's unilateral acts against the debtor or property of the estate.

In interpreting § 362(h), the Court agrees with the Ninth Circuit that:

[a] 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the automatic stay were intentional.

*Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989)): *see Cuffee v. Atlantic Business And Community Dev. Corp. (In re Atlantic Business And Community Corp.),* 901 F.2d 325, 329 (3rd Cir.1990) (applying *Bloom* standard); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1104–05 (2nd Cir.1990) (agreeing with

*Bloom* that § 362 imposes "a standard less stringent than maliciousness or bad faith to govern the imposition of sanctions in bankruptcy cases") (citations omitted); *In re Bennett,* 135 B.R. 72, 75 (Bankr.S.D.Ohio 1992) (debtor need not prove "bad faith or maliciousness") (citations omitted).

First, the Court finds that GTE had knowledge that the automatic stay of § 362 applied to its postconversion collection efforts in performing the Second Disconnection. As the bankruptcy court stated in *Thacker v. Etter (In re Thacker),* "[i]n order to prevail on ... a motion for civil ... contempt [for violation of § 362] the moving party need only show that the respondent was armed with sufficient facts to give a reasonable [person] constructive knowledge that the stay was in effect, and that notwithstanding such knowledge, actions were taken in violation of the stay". *Thacker v. Etter (In re Thacker),* 24 B.R. 835, 838 (Bankr.S.D.Ohio 1982) (footnote with citations omitted); *see Constantino v. Flanders Hill Development (In re Constantino),* 80 B.R. 865, 868 (Bankr.N.D.Ohio 1987) (stating that a creditor "can be charged with notice if [it] w[as] in possession of sufficient facts such as would cause a reasonably prudent person to make further inquiry") (citations omitted); *c.f. In re Sermersheim,* 97 B.R. at 888 (telephonic notice of pendency of bankruptcy case found sufficient to hold creditor in violation of § 362(h)).

GTE acknowledges that it was informed prior to the Second Disconnection that § 348 precluded its collection efforts against the Smiths. *See* Pretrial Brief of Defendant GTE North Incorporated, at p. 2, para. 1. Therefore, GTE clearly had notice prior to the Second Disconnection that the automatic stay applied to its collection efforts against the Smiths. Indeed, both the plain language of § 348(d) and the cases interpreting this provision indicate that, upon conversion, a preconversion debt "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition". 11 U.S.C. § 348(d); *see In re Deiter,* 33 B.R. 547, 548 (Bankr. W.D.Wisc.1983) (automatic stay applicable to utility's efforts to collect preconversion debt); *see also United Counties Trust Co. v. Knapp*

*(In re Knapp)*, 137 B.R. 582, 586 (Bankr. D.N.J.1992) (preconversion credit card charges treated as prepetition claims pursuant to § 348(d)); *Stinehart v. Mid–American Bank & Trust Co. (In re Firsdon)*, 70 B.R. 719, 723 (Bankr.N.D.Ohio 1987) (noting that prosecution of postconversion action against debtor "likely" constituted violation of the automatic stay in case which was converted from chapter 11 to chapter 7 where "it [was] evident that the events which gave rise to the [action] occurred during the pendency of the [d]ebtor's chapter 11 case"). In continuing collection actions against the Smiths after being informed that the automatic stay applied to its collection efforts, GTE proceeded at its own risk.

In view of the fact that GTE intentionally disconnected the Smiths' telephone service after receiving notice from the Smiths attorney that the bankruptcy code stayed its collection activities, the Court finds that GTE willfully violated the automatic stay.

Significantly, GTE did not bring a motion for relief from stay or a declaratory judgment action in this Court based on its view that the automatic stay was inapplicable to a preconversion debt before instituting the Second Disconnection. *See In re Sermersheim*, 97 B.R. at 889 (wherein this Court noted that creditor was capable of seeking relief from the automatic stay prior to proceeding with collection actions against debtor); *In re Deiter*, 33 B.R. at 547 (utility applied for a declaration that the automatic stay was inapplicable); *c.f. Olsen v. Deutscher (In re Nashville White Trucks, Inc.)*, 731 F.2d 376, 378 (6th Cir.1984) (stating that permitting unilateral action by state commissioner of revenue to collect unpaid sales tax prior to obtaining relief from the automatic stay would "create chaos in the administration of the bankrupt's estate", one of the problems which § 362 was supposed to prevent). As the court noted in *Brock v. Barlow (In re Brock)*,

> determinations [as to whether a creditor's actions are governed by the automatic stay] belong exclusively to the bankruptcy court and in the absence of an order of relief entered by the bankruptcy court a

creditor and creditor's counsel proceed at their peril.

*Brock v. Barlow (In re Brock)*, 58 B.R. 797, 804 (Bankr.S.D.Ohio 1986) (citations omitted).

■ Nor can the Court condone GTE's failure to return the Payment to the Smiths after learning that GTE's actions did, indeed, violate the automatic stay. A creditor who violates the automatic stay has an affirmative duty to restore the status quo. *In re Sermersheim*, 97 B.R. at 888–89 (creditor who fails to return status quo after receiving notice of automatic stay is liable for damages for such violation); *In re Dungey*, 99 B.R. 814 (Bankr.S.D.1989) (creditor's refusal to return wages garnished prepetition represented a violation of the automatic stay).

### GTE's Purported Good Faith Reliance Upon the Advice of In–House Counsel

■ GTE argues that its violation of § 362 was not willful because of its purported good faith reliance upon the advice of in-house counsel. The Court disagrees. "Even before Congress enacted section 362(h) ... good faith reliance on the advice of counsel was no defense to a contempt action brought to remedy willful violations of the stay." *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 483 (9th Cir.1989) (citing *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 57–58 (2nd Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)) (footnote omitted); *see Michalski v. State Bank And Trust (In re Taco Ed's, Inc.)*, 63 B.R. 913, 931 (Bankr.N.D.Ohio 1986) (actions taken in violation of the automatic stay were sanctionable notwithstanding the fact that creditor purportedly relied upon advice of counsel); *In re Ashby*, 36 B.R. 976, 978–979 (Bankr.D.Utah 1984) (reliance upon the advice of counsel and standing Chapter 13 trustee did not alter court's conclusion that creditor violated stay); *see also Homer Nat'l Bank v. Namie*, 96 B.R. 652, 654 (W.D.La. 1989) (stating that "a violation of the automatic stay can be willful even if it occurred on the advice of counsel") (citation omitted); *In re Meinke, Peterson, & Damer, P.C.*, 44 B.R. 105, 108 (Bankr.N.D.Tex.1984) (noting

that "[a] violation of the automatic stay of Section 362 may be willful even if it occurred on the advice of counsel") (citations omitted). As the Ninth Circuit stated in *In re Taylor,* "[i]t would contravene a fundamental policy of federal bankruptcy law to allow creditors to proceed with actions possibly subject to the stay merely upon the advice of an attorney that they are entitled to proceed." *In re Taylor,* 884 F.2d at 483.

■ The proposition that the good faith advice of counsel is no defense to an action under § 362(h) is of greater force in the instant adversary where the advice relied upon was that of in-house counsel. As a corporation, GTE necessarily acts through its employees. Both in-house counsel and Teubner are GTE employees. The fact that one employee of GTE violated the automatic stay based upon the advice of another employee of GTE does not alter the fact that GTE willfully violated the automatic stay.

## WHETHER GTE VIOLATED THE DISCHARGE INJUNCTION

In view of the above finding that GTE willfully violated the automatic stay, the Court need not decide whether GTE's conduct also violated the discharge injunction of § 524. *Cf.* 11 U.S.C. § 524(a)(2) (enjoining any act to collect a debt discharged under § 727).

## WHETHER THE SMITHS ARE ENTITLED TO DAMAGES AND ATTORNEYS' FEES

### Actual Damages

■ The Court concludes that the Smiths are entitled to actual damages, exclusive of attorneys' fees, in the amount of $326.15, as more fully set forth at page 114, *supra.*

■ Although the Court agrees with the Smiths that the $109.28 Payment collected by GTE from the Smiths postconversion should be returned to them, the Court cannot agree with the Smiths' characterization of the Payment as "damages". To the contrary, GTE's actions in collecting the Payment in violation of the automatic stay were of no legal effect. *In re Dungey,* 99 B.R. at 816. Therefore,

GTE presently has an affirmative duty to return the $109.28 Payment to the Smiths.

### Attorneys' Fees

■ Section 362(h) specifically provides that a party "injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including ... attorneys' fees". 11 U.S.C. § 362(h). The Court finds the 12.35 hours expended by the Smiths' attorney on this matter, as more fully set forth in Plaintiff's Exhibit 1, to be reasonable. Further, the Court finds that $100 per hour represents a reasonable rate of compensation for attorneys practicing in this area. Therefore, the Court finds that The Smiths should be awarded attorneys' fees in the amount of $1,235.00.

■ The Court cannot agree with GTE that the instant adversary is analogous to *In re Newell,* 117 B.R. 323 (Bankr.S.D.Ohio 1990). In contrast to the facts presented to the court in *Newell,* the instant adversary does not represent an "inadvertent" violation of the automatic stay. Further, *Newell* represented a case where a debtor's attorney filed an adversary complaint before attempting to contact a creditor who violated the automatic stay. In this adversary, Barry contacted GTE prior to the Second Disconnection and instructed GTE that the automatic stay was applicable to GTE's efforts to collect a debt incurred prior to the Conversion Date. Notwithstanding such contact from Barry, GTE proceeded with the Second Disconnection. As a result, the Smiths were required to seek relief in this Court in order to enforce the automatic stay.

■ Nor does the record support a finding that the attorneys' fees recoverable by the Smiths should be reduced based upon the Smiths' alleged failure to settle this adversary at an earlier date. In this regard, the Court finds it important to note that the assertions of counsel do not represent probative evidence. Moreover, as noted by the Court at trial, resort to judicial notice does not permit the Court to accept the truth of assertions by counsel contained within the Court's file. *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer),* 95 B.R.

143, 146 (9th Cir. BAP 1988) (stating "[t]hat a fact to be noticed is found in the court's records is not talismanic; the fact still must be of the type described in Fed.R.Evid. 201") (citations omitted); *see also In re MCorp Financial, Inc.,* 137 B.R. 219, 229 (Bankr. S.D.Tex.1992) (taking judicial notice of disclosure statement in case file but not of the truth of the assertions contained therein) (citations omitted), *app'l dism'd,* 139 B.R. 820 (S.D.Tex.1992); *In re Mohring,* 142 B.R. 389, 393 n. 11 (Bankr.E.D.Cal.1992) (refusing to take judicial notice of the truth of the assertions contained in debtor's bankruptcy schedules), *aff'd,* 153 B.R. 601 (9th Cir. BAP 1992), *aff'd,* 24 F.3d 247 (9th Cir.1994) (Table).

### Punitive Damages

■ Furthermore, GTE's failure to return the Payment, despite its knowledge that the automatic stay applied to its efforts in collecting a preconversion debt against the Smiths, warrants an award of punitive damages against GTE in the amount of $1,000.00. *See* Defendant's Exhibit B, Memorandum prepared by GTE's in-house legal counsel dated July 16, 1993, at p. 1, para. 1 (stating that "[i]n my opinion, [GTE] may not pursue collection of the [preconversion] service charges outside the bankruptcy proceeding"). GTE's cavalier disregard for the automatic stay in failing to return the Payment at any time during the course of this adversary cannot be condoned by the Court. *See In re Dungey,* 99 B.R. 814 (Bankr.S.D.Ohio 1989) (award of punitive damages awarded notwithstanding debtor's failure to request punitive damages where creditor who garnished wages postpetition failed to restore garnished wages to debtor); *In re Gault,* 136 B.R. 736 (Bankr.E.D.Tenn.1991) (punitive damages warranted where IRS served three notices of levy upon debtor despite knowledge that it was in violation of the automatic stay).

■ GTE's purported reliance upon the advice of in-house counsel does not represent a defense to an action for punitive damages. Again, as a corporation, GTE acts through its employees and is responsible for actions taken upon the advice of its employees.

## SANCTIONS UNDER FED.R.BANKR.P. 9011

Lastly, the Court cannot agree with the Smiths that certain pleadings prepared by GTE violated Fed.R.Bankr.P. 9011. *See Mihalik v. Pro Arts, Inc.,* 851 F.2d 790, 793–94 (6th Cir.1988) (finding that a party's inaccurate prediction as to how court would resolve case did not warrant Rule 11 sanctions); *Paren v. Noneman (In re Paren),* 158 B.R. 447 (Bankr.N.D.Ohio 1993) (motion for sanctions denied where party's actions in filing complaint were not unreasonable in the circumstances presented to the court).

In light of the foregoing, it is therefore

ORDERED that the Smiths be, and they hereby are, granted judgment in the amount of $1,561.15 in actual damages against the defendant GTE North Incorporated. It is further

ORDERED that GTE North Incorporated shall turnover to the Smiths the $109.28 received from the Smiths in payment of a preconversion debt. It is further

ORDERED that the Smiths be, and they hereby are, granted judgment in the amount of $1,000.00 in punitive damages against GTE North Incorporated.